Usher's Ex'r v. Flood.

CASE 77—PETITION EQUITY—JANUARY 19.

## Usher's Ex'r v. Flood.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. STATUTE OF FRAUDS—PAROL CONTRACT FOR SALE OF LAND.—Mere possession under a parol gift, or a parol agreement for sale, of land will not enable the party in possession to defeat a recovery by the donor or vendor, but entitles him to a lien for the consideration paid, and to such equities as may arise out of the transaction.

2. RESCISSION.—Either the vendor or vendee may rescind a parol contract for the sale of land upon equitable principles.

3. SUFFICIENCY OF "MEMORANDUM."—A letter to one whom the writer had treated as a son, promising to give him upon his marriage "a house and furnish it," is not a sufficient written memorandum to take the promise out of the statute of frauds, the letter containing no contract, or consideration for the promised gift; nor does the fact that the writer afterward built a house and placed the party in possession convert the letter into an enforceable contract.

4. CASE ADJUDGED.—Appellant's testator placed appellee, who had rendered him faithful service for many years, and whom he had treated as a son, in possession of a house and lot under a parol gift, and made a will devising to him the property, but by a codicil afterward revoked the devise. Appellant now seeks to recover the property from appellee.

   *Held.*—That while the testator's affection for the appellee may have prompted his liberality, yet it originated from the faithful services rendered him by appellee for many years, which must be taken

to be the consideration for the gift, and while appellee can not resist
the recovery, he is entitled to a lien for the value of his services less
the benefits received.

BROWN, HUMPHREY & DAVIE AND GOODLOE & ROBERTS
FOR APPELLANT.

1. Mere possession by a parol donee or vendee of land, will not enable·
him to defeat an action brought by the owner to recover the posses-
sion. None of the cases hold that possession alone is sufficient for
*that* purpose; they go no farther than to hold that a court of equity.
will enforce the defendant's equitable rights. (Nichols v. Nichols, 1
Marsh., 167; Kenny v. Marsh, 2 Marsh., 49; Letcher v. Cosby,
2 Marsh., 107; Lucas v. Mitchell, 3 Marsh., 245; Barnes v. Wise, 3
Mon., 170; McCampbell v. McCampbell, 2 Mar., 112; McCampbell
v. McCampbell, 5 Litt., 92; Brown v. East, 5 Mon., 406; Gudgell v.
Duvall, 4 J. J. Mar., 229; Ford v. Ellingwood, 3 Met., 359; Park's
Heirs v. White's Heirs, 4 Dana, 552; Harron v. Johnson, 3 Met., 579;
Cornelison v. Cornelison, 1 Bush, 150; Rucker v. Abell, 8 B. M., 566;
Glass v. Abbott, 6 Bush, 423; Richmond and Lexington Turnpike·
Road Co. v. Rogers, 7 Bush, 535; Holtzclaw v. Blackaby, 9 Bush, 44;
Dillon v. Crook & Co., 11 Bush, 325; Stephens v. Reavis, MS. Op.,.
Dec. 17. 1881 [3 Ky. Law Rep., p. 475]; Barfield v. McMurtry, MS.
Op., Sept. 24, 1884 [6 Ky. Law Rep., p. 417]; Hayden v. McIlvain, 4
Bibb., 59.)

2. If the·consideration for the gift was Flood's marrying, this is as
inimical to the statute of frauds as is the agreement to convey the·
land. (Potts v. Merritt, 14 B. M., 407.)

3. The letter relied on as evidencing a contract to convey is not a suffi-
cient memorandum to satisfy the requirements of the statute of
frauds. (Kay & Casey v. Curd, 6 B. M., 100; Ellis v.·Desmon's
Heirs, 4 Bibb., 466; Fowler v. Lewis, 3 Mar., 445.)

4. The executor having a power of sale but no title, may appeal to a
court of equity to declare the ownership of the property to be in the
testator, so that it may be fairly sold. (Dean v. Dean, 7 Mon., 310.)

LANE & HARRISON AND E. E. McKAY FOR APPELLEE.
Brief not in record.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

J. W. Usher at his death left a last·will and tes-
tament, by which he appointed the appellant, W.
F. Pragoff, his executor. The executor filed this
petition in July, 1880, for the settlement of the
estate, making the creditors and devisees defendants,.

and sought to subject the real estate in controversy to sale for the payment of the debts and legacies.

During the progress of the action the appellees, Michael Flood and wife, who were claiming the realty asked to be sold, consisting of a house and lot in the city of Louisville, were made defendants, and this is a contest between the appellees on the one hand and the estate of Usher on the other, as to the right of property in this realty.

Usher being the owner at one time of the property, and invested at his death with the legal title, it is claimed by the appellees that Michael Flood derived his title from Usher in his life-time, under the following circumstances:

That in the year 1856 he entered into the service of the decedent Usher, and worked and labored for him from that date until the year 1868, at which time he reached the age of twenty-one years; that at the time he began to labor for the deceased the latter promised and undertook with the appellee (Michael Flood) to make payment and provision for his services when he attained twenty-one years of age; that having arrived at the age of twenty-one, the decedent proposed to him, if he would marry his co-appellee (his present wife) that, in consideration thereof and the past services rendered the decedent by the appellee, he, the decedent, would convey to him the lot of land in controversy, build him a house thereon, and furnish it; that he accepted the proposition made by decedent, married his co-appellee, and in a short time thereafter the decedent erected a house on the lot, and furnished

Usher's Ex'r v. Flood.

it, and placed the appellee in possession, in compliance with his agreement, and they have been holding and claiming it as their property in the undisturbed possession until the institution of the present action.

The decedent, Usher, was a bachelor, advanced in years, having no near relatives except his father and mother, who died many years since. He seems to have acquired a great fondness for Mike, taking him to live with him at the age of fourteen years, where he remained from that time until his marriage, which occurred when he was about twenty-four years of age. He treated him in every respect as his son, sending him to school, and learning him business habits; and, on the other hand, the adopted son rendered him faithful service in the conduct of business matters, for which the decedent not only expected to compensate him, but, in fact, did compensate him by giving him the house in controversy, and furnishing it throughout, but supplied Mike with all the necessaries of life. An unfortunate disagreement between the two after the marriage of Mike severed their friendly relations, and although the decedent had made one or two wills devising to the appellee the property, the last will, by a codicil annexed, revoked the devise, and left the appellee without any interest in his estate.

That he gave to the appellee the house and lot, and placed him in the possession, is satisfactorily established. That possession was continued in the appellee for near fourteen years, and up to the death of the testator. The decedent had a great desire

that Mike should marry, and agreed with him if he would marry and settle in life, he would give him a house and lot, and from the testimony in the case it is evident that the affection he had for the appellee, and the services rendered the decedent by him, constituted the consideration for the promise. He wrote to the appellee from Paris, France, when informed by Mike that his purpose was to marry, telling him to take Mrs. Harvey and Mr. Pragoff down to see the girl, and if they were pleased with her, he would have no objection. *I will give you a house and furnish it, and will give you a big wedding.* The young lady, in the opinion of one of the two friends, was such a girl as Mike should marry, and as soon as the decedent returned home they were married, and the latter proceeded at once to build the house in accordance with his promise, and placed the young couple in possession. Their first born was named after him, and they were treated by him as a father until the unfortunate disagreement that took place between them shortly before his death. The letter written from France has been lost, but its contents clearly proven by disinterested witnesses.

The statute of frauds is interposed against the claim of title asserted by the appellee. The statute of this State provides with reference to real estate, that "no estate of inheritance or freehold, or for a term of more than one year in lands, shall be conveyed unless by deed or will." (General Statutes, chapter 24, section 2.) And further: "No action shall be brought to charge any person    *    *    *

upon any agreement made in consideration of marriage, except mutual promises to marry, nor upon any contract for the sale of any real estate, or any lease thereof, for a longer term than one year, unless the * * * ˙ contract, agreement * * * or some memorandum * * * thereof be in writing, and signed by the party to be charged therewith." (General Statutes, chapter 22, section 1.)

The doctrine maintained by counsel for the appellee, and upon which the judgment below to a great extent is sought to be sustained, has received the sanction of this court in some of the earlier cases upon the subject, based upon the idea that a parol contract for the sale of land is not void, but that the statute only forbids the bringing of an action to charge any one upon such a contract.

That if the appellee in this case had instituted his action upon the parol agreement to enforce the contract it would have been dismissed, but being in possession, he may use that possession as a defense to prevent the vendor from recovering the realty.

That the transfer of the possession under a verbal contract, although it does not vest the vendee with title, gives him such a right of possession as can not be disturbed by the vendor; so at last, under such a ruling, the only remedy for the vendor is to convey the land if he desires to collect his purchase money, and notwithstanding the 'statute of frauds, the contract must be enforced. On the other hand, it is insisted, with authority from this court in support of the position, that with the vendee in possession the vendor may tender a conveyance and

compel the vendee to pay the purchase money. The
vendor has by such an application of the statute to
the parol contract sold his land, but the vendee has
not purchased. The one (the vendor) may enforce
it, but the vendee can not, disregarding all the ele-
mentary doctrine in regard to contracts that the
obligation must be mutual and binding upon both
parties in order to make it valid. Much uncertainty
exists in the minds of the profession as to what the
law really is, by reason of the inconsistent and con-
flicting opinions upon this question; but in follow-
ing the later cases, except now and then a dictum,
it will be found that such a contract can not be
enforced by either party, and its rescission at the
option of either must be adjudged upon equitable
grounds. To deny the right of the vendee to en-
force specific performance and allow the vendor at
his option to make the conveyance and compel per-
formance, is a doctrine not sustained by any of the
later cases; but the parol contract may be disre-
garded by both the vendor and the vendee. It may
be instructive to notice some of the cases sustaining
the view that the vendee is compelled to accept the
title. In the case of Barnes, Anderson, &c., v. Wise,
3 Mon., 169, Barnes, who sold to Wise, had no title
himself to the lot sold, and Wise, when purchasing
from him, agreed to look to White, in whom the
legal title was vested, for a deed. It was a chancing
bargain; yet the court, in discussing that case, said:
"But equity which follows the law, and repels the
absurdity of enforcing a contract which the law dis-
regards, will not specifically decree the performance

of such a contract," but proceeded, however, to say that "such a contract is good in the mouth of a defendant as a matter of defense," and that "in a defensive attitude such contract should be his shield, and its obligation be acknowledged."

If a party to such a contract makes himself a complainant, his case is hopeless; if a vendee in possession, he may defend when that possession is about to be disturbed; and in Roberts v. Tennell, 3 Mon., 247, the difference between holding a contract void and declaring that no action can be maintained upon it, is attempted to be shown upon the same reasoning as found in Wise v. Barnes.

In the case of Letcher v. Cosby, 2 Marshall, 106, it was held that the contract afforded a valid ground of defense, arising from a moral obligation that a court of equity would lend its aid to enforce.

In Lucas v. Mitchell, 3 Mar., 244, this court said: "It is undoubtedly true that the statute has taken away the remedy to enforce such a contract, but it is equally true that it does not avoid the contract, nor destroy the moral obligation to comply with it on the one side, or the correspondent right which results from it on the other;" and the court proceeds to determine that, for the purposes of defense when the claim is sought to be enforced, the statute is not in the way.

In Park's Heirs v. White's Admr's, 4 Dana, 552, it was said "that a parol gift of land, though not enforceable by law, is not illegal or void. The donor is, in morality and good conscience, under the same duty to respect it and perfect it, if necessary, as if it were in writing."

As late as the case of Ford v. Ellingwood, 3 Met., 359, this doctrine has been enunciated, and proceeds upon the idea that the party in default is in good morals bound to comply with his contract, and a vendee in possession may defend on that ground, and prevent a recovery by the vendor of the land sold. If, however, the vendee wants to rescind when in possession, he is not allowed to do so unless the vendor is willing; for if the vendor tenders a deed in accordance with the contract, the vendee must accept. The later, and, in fact, some of the earlier cases, recognize a different rule.

In the case of Grant's Heirs v. Craigmiles, 1 Bibb, 205, it is said, "that some judges have thought that another kind of evidence was equivalent to written evidence, such as paying the consideration, being let into possession, making valuable improvements, etc. * * * The same fraud and perjury which can conceive and prove the agreement by parol, can also prove the performance in part; * * * but where the law is known, the party who fails to get the land agreed for because he is without the evidence required, must take the blame on himself, for it is his own folly or negligence that has made him part with his money in expectation of the land, or e converso, the possession of the land in expectation of the price, without the requisite evidence and in the very teeth of the statute."

If the party in possession may by parol evidence establish a contract for the sale of land to defeat an ejectment, or the recovery by the one holding a perfect title, the mischief intended to be provided

against by the statute is disregarded, and the owner of an undoubted title denied the right to his land, because the defendant has shown by parol that he entered as purchaser. The earlier cases, or some of them in this court, sustained the judgment below, denying the right of the vendee to resist a recovery of the purchase money notes, because at law the entry upon and the possession by him constituted a consideration, and from that. originated the doctrine that the vendor could tender a deed and compel the vendee to accept, and if he failed to do so, the possession by the vendee under the parol contract would defeat any attempt by the vendor to recover the land. In Curnutt v. Roberts, reported in 11 B. M., 42, Roberts sold to Curnutt by parol contract his right to certain land for which the latter agreed to pay him thirty dollars. Roberts tendered a deed and sought to recover the purchase money, and for which a judgment was rendered in the court below. Judge Simpson delivering the opinion of the court, said:

"The question presented is, substantially, whether a vendor, when the contract for the sale of land is simply verbal, and not reduced to writing, can at his option, by tendering an execution of the contract upon his part render it valid and enforceable, notwithstanding, at the time it was entered into, it was within the operation of the statute of frauds, and no action could be maintained upon it. by either party. If such a right exists in the vendor, it in effect places it in his power, at his election, to make every verbal contract for the sale of land

binding on the parties, although no such right exists in the vendee. * * * A verbal contract for the sale of land is not legally obligatory upon either party, until some writing evidencing the sale, and sufficient to take the contract out of the statute of frauds, is executed by the vendor and accepted by the purchaser."

In Murray v. Pate, 6 Dana, 335, in speaking of the effect of the parol contract, it is said: "It is not legally obligatory on either party until a deed conveying the land, or some other writing evidencing the sale and binding the vendor, was actually accepted by the purchaser. * * * The parol agreement to sell and convey the land being unobligatory on the vendor formed no consideration for the promise to pay the price, or to accept the deed. To say that the purchaser is bound to accept the deed which will bind him to pay the money, would be to hold him bound by the contract at the will of the vendor who is not bound, and would enable the vendor to maintain an action against the vendee for the non-acceptance of the deed and for the non-payment of the money, while the vendee could not, by paying or tendering the money, have an action against the vendor."

In the case of Speers v. Sewell, reported in 4 Bush, 239, the father made an oral contract with the son, whereby he agreed to convey to John his homestead tract of land in consideration of John's living with him, attending to his business, and taking care of him and his wife during their lives. John was in the possession, and after the death of his father-

and mother an action was instituted for a partition. of the land, etc.

This court, through Judge Robertson, said: "As there was no written memorial of the contract for the conveyance of the homestead land to the appellant John, he could not by suit enforce a specific performance even on the meritorious ground of the strong moral equity resulting from his long and. faithful services in executing the promised considera- tion, but he has a resisting equity not affected by the statute of fraud and perjuries. For his services he has an equitable lien on the land, and can not justly be required by a court of equity to surrender his rightful possession of the land until he shall have been indemnified. If the appellees avoid a conveyance they must do so *cum onere.*"

An account of the value of John's services was ordered, and his possession directed to be protected until the amount allowed him was paid. The con- clusion in that case is the correct and proper solu- tion of this question. Either party, the vendor or the vendee, may rescind the contract upon equitable principles. If the vendor refuses to convey, an ac- count for improvements will be taken, and if any purchase money has been paid, the whole will con- stitute a lien upon the land, and if the vendee refuse to accept the deed, he will be accountable for rents. The equities, however, to which either party may be entitled must necessarily be determined by the facts of the particular case.

In the case of the Richmond and Lexington Turnpike Road Co. v. Rogers, 7 Bush, 532, the

same doctrine is announced, followed by the MS. opinions of Stephens v. Reavis, December 17, 1881, and Barfield v. McMurtry, September 24, 1884. It results, therefore, that the appellee can not defeat the right of recovery upon a mere possession under a parol agreement for sale as against the vendor, who exhibits a perfect title. He is entitled to a lien for the consideration paid, and to such equities as may arise out of the transaction. This must now be regarded as the settled doctrine on the subject.

There is yet another question presented by the record, upon which it is urged the judgment below can be maintained. The letter written by Usher, the decedent, while in Paris, it is said, takes this case out of the statute of frauds, and while lost, its contents have been established. This letter reads:

"My Dear Boy: You wrote me that you were going to engage yourself to a young lady. If she is a nice and sensible girl, I have no objection. Take her down to see Mrs. Harvey and Mr. Pragoff, and if they are suited with her, I will give you a house, and furnish it, and will give you a big wedding."

It does not appear whether the young lady suited both of these friends or not; but as soon as Mr. Usher returned from Europe he saw the girl, was pleased with her, the marriage took place, the house was built, and the young couple took possession as their property. The proof, we think, establishes the gift. This memorandum contained no contract or any consideration for the promised gift, and could not have been enforced by the appellee either before

Usher's Ex'r v. Flood.

or after the marriage. It may and does conduce to sustain the verbal gift, but is evidence for no other purpose. If the appellee had failed. to purchase or build a house, no action could have been maintained on this letter, and the mere fact that he afterwards built a house and placed them in the possession does not convert that into a written contract that before was a mere nullity, or only such a promise as any father would, in all probability, have made the son on the eve of marriage.

It does appear, however, from this proof, that a parol gift was made, and the appellee placed in the possession, and enjoyed the use of the property for many years. It further appears that the appellee, Michael Flood, had been in the employ of the decedent for many years, and was the foreman or general superintendent of his business—that his services were valuable and formed the consideration for the gift of the house and lot. His affection for the appellee may have prompted the liberality on the part of the decedent, all of which, however, originated from the faithful service rendered him by Mike for many years.

He, it is true, went to night school, and was sent to St. Louis to school for two sessions; but we find no other consideration for the services but the occupancy of the house and the kindness of the decedent in furnishing the house and the groceries. Were not the services more valuable than the compensation? and if so, in attempting to take from the appellee this property, the appellants must account to Mike for the value of his services, less the benefits received.

If a bare subsistence for himself and family under the circumstances was sufficient compensation, he can recover nothing. If more, then he should be allowed to assert his claim, to be made alone out of the property, and not to exceed its value.

We have assumed that there was a parol gift, and we think the proof establishes that fact. The case should go to a commissioner to take proof as to the value of appellee's services, and the sum, if any, allowed Mike, should be enforced as a lien on the property sought to be recovered. If the appellee had paid the purchase money the Chancellor would have enforced the lien, and if paid for in services rendered, to the extent of the value of such services the lien should be enforced as in the case of Spears v. Sewell, 4 Bush, 239.

The judgment below is therefore reversed, and cause remanded for proceedings consistent with this opinion.