HENRY B. KENT, PLAINTIFF IN ERROR, v. THE PHENIX ART METAL COMPANY, DEFENDANT IN ERROR.

Submitted March 19, 1903—Decided June 8, 1903.

1. An indivisible contract for employment of a broker in the sale of both real and personal property and for payment of commissions upon the purchase-price, the contract not being in writing, is totally void under the statute of frauds. *Gen. Stat., p.* 1604, § 10.

2. A verbal promise to pay compensation for services rendered in negotiating a sale of real estate, whether made before or after the services are performed, is void under the statute of frauds. *Gen. Stat., p.* 1604, § 10.

3. A bill of particulars annexed to a declaration or delivered pursuant to demand, under section 236 or section 237 of the Practice act (*Gen. Stat., p.* 2572), limits, for the purposes of the trial, the generality of the pleading.

4. Where the issue as made up on the pleadings and bill of particulars has been fully tried and correctly settled, no amendment having been applied for in the court below, the court of review will not permit the plaintiff in error to amend the bill of particulars in order to bring about a reversal of the judgment and a new trial upon a different issue.

On error to Middlesex Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, HENDRICKSON and PITNEY.

For the plaintiff in error, *Voorhees & Booraem.*

For the defendant in error, *George Berdine.*

The opinion of the court was delivered by

PITNEY, J. This action was brought to recover commissions alleged to be due to the plaintiff for services rendered to the defendant in negotiating a sale of certain real and personal property constituting its manufacturing plant and stock of goods, situate at New Brunswick, in this state. The declaration contains two counts, the first of which sets up a special agreement made between the parties on February 4th, 1901, entitling the plaintiff to a commission of three per cent. upon the purchase-price, followed by averments showing that in pursuance of the agreement the plaintiff procured a purchaser at the price of $70,000; that the sale was carried through, and that the defendant received the consideration money from the purchaser. The second count was the usual combination in short form of the common money counts, averring an indebtedness to the amount of $5,000 owing by the defendant to the plaintiff (*inter alia*) "for work, labor, care, diligence, journeys and attendance on the part of the plaintiff before that time done, performed and bestowed as the agent of and for the said defendants and on their re-

tainer, and for certain commissions and rewards due and of right payable from the defendants to the plaintiff in respect thereof," continuing with averment of a promise by the defendant to pay the indebtedness upon request, and a breach of that promise.

Pursuant to section 236 or 237 of the Practice act (*Gen. Stat., p.* 2572) the plaintiff delivered (or filed with the declaration) a bill of particulars of his demand, of which the following is a copy:

"The following is the bill of particulars of the demand upon which the plaintiff's declaration in the above-entitled cause is founded, to wit:

"The sum of two thousand one hundred dollars due the said plaintiff for commissions, at the rate of three per cent., which the said defendants, on or about the fourth day of February, one thousand nine hundred and one, agreed to pay the said plaintiff on the purchase-price, in case he, the said plaintiff, should procure for the said defendants a purchaser for certain property belonging to the said defendants, constituting their manufacturing plant and stock of goods, situate in the city of New Brunswick, in the county of Middlesex, which said commissions became due and payable to the said plaintiff on the sale of said property of the said defendants to one D. Wylie McCaughey through the agency of the said plaintiff as broker, in pursuance of said agreement, for the sum of seventy thousand dollars, which said sum remains due and unpaid by the said defendants to the said plaintiff."

The printed book does not disclose what plea was filed by the defendant; therefore, presumably, it was a plea of the general issue. At the trial the jury rendered a verdict in favor of the defendant, in obedience to the direction of the trial judge. To review the consequent judgment this writ of error is brought. The exceptions challenge the legal propriety of the direction of a verdict for defendant, and also question the correctness of certain propositions that were laid before the jury in explanation of the binding instructions, and the refusal of the judge to submit certain questions for

the jury's determination. If the judge was justified in directing a verdict in defendant's favor the other exceptions must fall, for they relate merely to the grounds upon which that direction was based.

Error is also assigned upon the admission and exclusion of evidence, but there are no exceptions to support these assignments.

To deal, therefore, with the direction of a verdict. The evidence on the part of the plaintiff tended to show that through his instrumentality the property of the defendant was sold out to a so-called "trust," known as the American Can Company, the actual transfer being made to D. Wylie McCaughey as the representative of that company. Plaintiff testified that he was employed for the purpose on or about February 4th, 1901, by a Mr. Whitfield and a Mr. Johnson, who were said to represent the defendant. They, or one of them, told the plaintiff that if he could sell the property to the "trust" for $40,000 or $50,000 they would gladly pay him a three per cent. commission. Afterwards, and before the transaction was closed, the plaintiff expressed a willingness to reduce the commission to one and one-half per cent. The plaintiff introduced Mr. Johnson to a Mr. Norton, who represented the purchaser, and the negotiation between Johnson and Norton was commenced in the plaintiff's presence. Subsequently it was continued in his absence, and resulted in the sale being carried through April 13th, 1901, in pursuance of an option given by the defendant to Norton on February 11th. At or about the time of the conclusion of the transaction a conversation took place between the plaintiff and Johnson, in which the latter objected to paying the plaintiff three per cent. upon the amount realized by the defendant upon the sale, but verbally promised to pay $500, which the plaintiff agreed to accept. The sale in question included a piece of real estate upon which the defendant's factory was situate, and the stock of goods and other personal property pertaining to its business. The testimony of the plaintiff renders it clear (and there is nothing to the contrary in the case) that the agreement between him and

Messrs. Whitfield and Johnson contemplated the negotiation of the sale of the entire property together, for a single consideration, and the payment to the plaintiff of a commission upon the entire consideration. Such was the plaintiff's case.

There was nothing in writing to show that the plaintiff was authorized to negotiate the sale, nor to show the rate of commission to which he was entitled.

The defendant called as witnesses both Johnson and Whitfield, and they denied that the plaintiff had been employed to negotiate the sale in behalf of the defendant; denied that he had been promised any commission; denied that either of them was authorized to employ the plaintiff or to agree to pay him commissions; denied that the plaintiff negotiated the sale, and denied that he had been promised $500 or any sum in settlement of his claim.

In order to prove the sale made by the defendant to the representative of the American Can Company the plaintiff offered in evidence a written stipulation, signed by the attorneys of both parties, of which the following is a copy:

"It is hereby stipulated by and between the counsel of the respective parties, the plaintiff and the defendant, that the following facts are hereby agreed upon and taken as true in the trial of this cause, to wit: The Phenix Art Metal Company sold and conveyed their manufacturing plant, to wit: the land and premises on Spring street, in the city of New Brunswick, New Jersey, the stock of goods manufactured and in process of manufacture therein contained, and the good will of their business, all together to one D. Wylie McCaughey for the sum of sixty-four thousand dollars ($64,000) on March 30, 1901, in pursuance of a certain option executed and given to one Edward Norton on Feb. 11, 1901. Production of evidence showing such option, sale and conveyance is hereby waived."

Plaintiff also introduced in evidence the deed from the defendant to McCaughey, dated March 13th, 1901, conveying the real estate in question, with the factory, manufacturing plant, machinery and fixtures therein, for a considera-

tion, as expressed, of "one hundred dollars, lawful money of the United States, and other valuable considerations."

The court directed a verdict for the defendant, on the ground that the alleged agreement between the plaintiff and the representatives of the defendant for a commission of three per cent. upon the purchase-price, the offer to accept one and one-half per cent. instead of three per cent., and the alleged promise by the defendant's representatives to pay $500 for the services performed, alike related to a sale of both real and personal estate, as a single transaction and for an entire consideration, not apportioned by the parties and not capable of apportionment under the evidence; and that since, under section 10 of the statute of frauds (*Gen. Stat., p.* 1604), an agreement for commission upon the sale of real estate not being in writing is void, the statute vitiated the entire agreement.

This view of the matter was undoubtedly correct so far as respects the claim of the plaintiff for a recovery upon the alleged contract. In 1 *Pars. Cont. (Book 2, 5th ed.), ch.* 1, § 11, *p.* 455, it is said: "Where the consideration is entire and incapable of severance, then it must be wholly good or wholly bad. If the agreement be entire, and not in writing, and a part of it relate to a matter which, by the statute of frauds, should be promised in writing, such part being void avoids the whole contract." And in 3 *Pars. Cont. (Part 2, 5th ed.), ch.* 5, *p.* 17, it is said: "If a contract be in its nature entire, and in one part it satisfies the statute and in others does not, then it is altogether void."

The circumstances of this case render it clear that the contract was indivisible and the contract an entire one. Counsel for the plaintiff claimed below, and claims here, that, as the deed of April 13th mentioned $100 as the consideration for the conveyance of the real estate, the balance of the $64,000 must, as against defendant, be taken to be the price at which the personalty was sold. This view is untenable, for the land was conveyed in consideration of "$100 *and other valuable considerations.*"

The effect of section 10 of the statute of frauds is to vitiate

the alleged verbal promise to pay $500, made after the services were rendered, as well as the contract for a percentage alleged to have been made in advance. The supposed consideration for the subsequent promise was the performance of an entire service, of which a material and inseparable part was of a kind that, by the express terms of the statute, did not entitle the plaintiff to compensation in the absence of a written agreement. There was at most, therefore, a mere moral obligation to pay; and such an obligation, as an executed consideration, is not sufficient to support a subsequent express promise. *Freeman* v. *Robinson*, 9 *Vroom* 383. But even if we could assume a legal consideration, the question remains, by what evidence is the subsequent promise to be proved? Here, again, comes in the express prohibition of the statute of frauds, declaring that the broker shall not be entitled to any commission unless he have written authority to sell, specifying the rate of commission. It would be a manifest evasion of the statute to permit a plaintiff to rely upon a subsequent verbal promise, instead of an antecedent verbal promise. In our view, section 10 must be enforced according to its plain letter and spirit, and a verbal promise, whenever made, will not confer a right to compensation, since the statute prescribes that it shall require a written engagement to create such a right.

In support of the validity of the verbal promise to pay $500 the plaintiff in error cites the case of *Griffith* v. *Daly*, 27 *Vroom* 466. But the facts of that case were essentially different from those here presented. There the plaintiff happened to be a real estate broker, but it was not for a broker's services that he sued. The bargain in that case was not to pay the plaintiff for selling the property or for negotiating a sale, he was a mere intermediary of the defendant in employing an auctioneer to make a public sale, and for these services there was a promise to pay him two per cent., including the services of the auctioneer. The defendant, by a private sale, negotiated before the date set for the auction, prevented the plaintiff from carrying out his contract, and this court held that upon that breach the plaintiff became

entitled to damages, and that this furnished an adequate consideration for defendant's express verbal promise to pay to the plaintiff two per cent. of the price realized at the private sale.

Nor can the plaintiff succeed at this time upon the assertion of his right to be rewarded according to a *quantum meruit* for the value of his services so far as they related to the negotiation of the sale of the personal property. It is true that the second count of his declaration was broad enough to have enabled him to claim a *quantum meruit* on the theory that the alleged contract was void. But by the express terms of his bill of particulars he limited the general averments of the declaration in such a manner as to confine his claim, for the purposes of trial, to a recovery upon the contract. By the terms of section 237 of the Practice act, as uniformly construed, the plaintiff is bound by his bill of particulars unless he be permitted to amend it. No amendment was made, nor was application for the purpose made at the trial. On the contrary, the case was tried solely on the theory that the verbal contract was the basis of the action, and upon the plaintiff's insistment that that contract was either valid *in toto,* or, if not, that it was divisible, and that a recovery could be had under it for commissions upon sale of the personal property. Not only was the proof of the plaintiff wholly directed to this issue, but no evidence was introduced tending to show the value of his services in negotiation for sale of the personal property. Upon the conclusion of the case plaintiff's counsel requested the trial judge to submit to the jury the question of the validity of the contract, whether the sale was consummated as the result of it, what moneys were realized from that sale for the personal property, and what commission the plaintiff was entitled to thereon. Plaintiff presented seven additional requests in writing, all of which related either to the validity of the contract so far as it pertained to personal property or to the apportionment of the consideration obtained for the personal property and for the realty, respectively, in order that a recovery might be had under the contract for commission

upon the personalty. No foundation having been laid in the evidence for an apportionment of the consideration, the court was not called upon to comply with those requests, much less to submit the case to the jury (in the absence of a request so to do), on the theory that there could be a recovery upon a *quantum meruit.*

In short, the plaintiff brought the defendant into court to answer to a claim made upon an express contract, and upon that alone; that was the issue tried below. That issue was properly adjudicated, and, on familiar principles, we are prohibited from reversing the judgment upon the theory that if another issue had been presented and tried it might have resulted in favor of the plaintiff.

Amendments of the proceedings are made at the instance of the parties in the cause. A trial judge is not permitted, much less required, to make such amendments in the absence of a motion.

Under our liberal statutory provision (*Gen. Stat., p.* 2556, § 138) it is common practice for the court of review to make such amendments as may be necessary to *sustain* the conclusion reached by the court below, if it appear that the real question in controversy has been fully and fairly tried and correctly settled. *Price* v. *New Jersey Railroad Co.,* 2 *Vroom* 229, 233, 234; *American Life Insurance Co.* v. *Day,* 10 *Id.* 89; *Ware* v. *Millville Fire Insurance Co.,* 16 *Id.* 177; *Excelsior Electric Co.* v. *Sweet,* 28 *Id.* 224; *S. C.,* 30 *Id.* 441.

But it is another and a very different matter to grant an amendment in the court of review in order to lay the foundation for a reversal and *venire de novo,* and thereby enable a party who was properly defeated upon the issues as made up and tried, to frame a new issue in the hope of a result more favorable to him. To permit such an amendment in the present case, no application to amend having been made in the court below, would, we think, be quite unjustifiable. If, therefore, the argument of counsel for the plaintiff in error in this court may be deemed to imply a request for an amendment negativing the validity of the contract, to answer which

he brought the defendant to trial, and thereupon setting up a claim on *quantum meruit* that depends upon the non-existence of such a contract, we are constrained to deny the request.

The judgment under review must be affirmed.