## Maloney v. Maloney et al.

(Decided March 22, 1935.)

SAWYER A. SMITH for appellant.

CHARLTON B. THOMPSON and ORIE S. WARE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 11, 1934, Catherine Maloney, a maiden lady past 80 years of age, died testate a resident of Kenton county, Ky. Having never married, she left no descendants, and her will, dated May 12, 1933, after some special devises and bequests, gave the remainder of her property to her two brothers, the defendants and appellees, Michael E. Maloney and James W. Maloney. Her estate, disposed of by her will, which was duly probated, consisted of property of the value of, perhaps, $150,000, mostly personalty, and her realty (being about one-fifth of her estate) was located in the states of New Jersey and Kentucky. The appellant and plaintiff, Edwin J. Maloney, was her nephew, being the

only child of a deceased brother. Upon the death of his father he went to live with his aunt, the testatrix, Catherine Maloney, which was in July, 1902. She reared and educated him, and, after her will was probated on March 5, 1934, he filed this equity action in the Kenton circuit court against his two uncles and the other appellees who were special beneficiaries under the will of his aunt, seeking by his petition to impress a trust upon the property devised and bequeathed to his two uncles by the residuary clause of his aunt's will because of the facts alleged by him therein.

They were, in substance (after first incorporating what we have stated), that, after entering the home of his aunt, and continuously until her death, "except a very short period of time," she treated him as her child, and he performed services for her around the home as is usually done by a son for a parent, and that such services were reasonably worth $25,000; "that she repeatedly stated and agreed that she would, in consideration of said services, and intended to bequeath and devise all her property, of every character and kind, to this plaintiff''; but that, because of changed financial conditions of each of the parties (to be hereinafter referred to), they changed the alleged agreement after the death of Thomas J. Maloney, an uncle of plaintiff, and a brother of his aunt, Catherine Maloney, which occurred on January 18, 1933, and that the parties then agreed to execute mutual wills devising and bequeathing to each other their respective estates, with the exception of certain agreed upon special devises, and that pursuant to the latter agreement they did execute mutual wills to that effect on February 14, 1933, 26 days after the death of Thomas J. Maloney in New Jersey. The latter died intestate, the owner of property worth at least $500,000, to be divided between his surviving brothers and sisters and the children of those who had died, and which made each heir or set of heirs entitled to one-fifth of his estate. So that plaintiff, as the only heir of his deceased father, obtained from his uncle's estate property of the value of at least $100,000, and his Aunt Catherine received a similar amount.

Defensive motions, demurrers, and pleadings were filed on rule days during vacation and later of record, and it was affirmatively made to appear that no writing of any kind was ever executed between plaintiff and his

Aunt Catherine other than their mutual wills, and neither of them made any reference whatever to any alleged contract for their execution, nor did the alleged mutual will of the aunt incorporate in any manner or make reference to the alleged consideration for her alleged promise to devise her property to plaintiff in consideration of services rendered by him to her as first alleged in his pleading. On the contrary, the motive of the aunt for executing her alleged mutual will is thus stated therein: "By reason of all the many kindnesses shown to me during his life and the love and affection I have for him thereby, I give devise and bequeath to my nephew, Edwin J. Maloney, all the residue of my estate, real and personal." The incentive for his executing his mutual will to his aunt is similarly stated in it. Because of the alleged agreements on the part of Catherine Maloney to devise° her property to plaintiff, her nephew (as he contends), being oral and not in writing, and perhaps for other reasons not necessary to mention, the court dismissed plaintiff's petition, and to reverse that judgment he prosecutes this appeal.

In the recent case of Gibson v. Crawford, 247 Ky. 228, 56 S. W. (2d) 985, we held that oral agreements to execute wills were embraced by the statute of frauds, especially so as they related to real estate, which was the character of property there involved, and that they would not be enforced unless evidenced by writing signed by the party to be charged, as is required by subsections 6 and 7 of section 470 of our present Statutes, saying: "No action shall be brought to charge any person—* * * Upon any contract for the sale of real estate, or any lease thereof for longer than one year * * * unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing, and signed by the party to be charged therewith, or by his authorized agent." It was further pointed out and approved in that opinion that a will executed pursuant to such oral promise or agreement (but which is not referred to in the will) is not sufficient to comply with the statute. The same principle of law had theretofore been approved by us in a number of cases, one of the latest of which was that of Hinton v. Hinton's Ex'r, 239 Ky. 664, 40 S. W. (2d) 296, and the same doctrine was likewise approved in the still later opinion of Price v. Aylor, 258 Ky. 1, 79 S. W. (2d) 350. Those opinions and

others referred to in them, as does also the case of Skinner v. Rasche, 165 Ky. 108, 176 S. W. 942, and relied on by counsel for appellant, approve the principle that the possessor of a binding and enforceable contract (which means one executed in compliance with the prevailing statutes) with another, whereby the latter agrees to make devises of his property to the holder of the contract, has two remedies when it is violated; (a) That he may enforce the contract by appropriate proceedings, or (b) that he may recover on a quantum meruit for the value of the services rendered and performed, or recover any other consideration advanced, and which latter may be done, notwithstanding the agreement to devise is not for any reason enforceable.

Defendants not only relied on section 470, embodying our long-standing statute of frauds, in avoidance of the imposition of the trust on the real estate owned by the testatrix, but they further pleaded and relied on section 4 of chapter 148, p. 481, of the Session Acts of 1928, and which is section 2651b-4 of the 1930 Edition of Carroll's Kentucky Statutes, and is a part of what is known as our "Uniform Sales Act." The first part of that section says: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." The second part applies its provisions to all sales or contracts transferring the title of personal property, notwithstanding it was the intention of the parties to make delivery at some future time or to procure and deliver the property in the future pursuant to the contractual terms.

Counsel for plaintiff seeks to avoid the application of the latter statute by relying upon the case of Wright v. Wright, 215 Ky. 394, 385 S. W. 188, wherein an agreement to devise personal property which rested in parol only was enforced; but that opinion was rendered before the enactment of our Uniform Sales Act, and there was then no such requirement with reference to the sale

or transfer of personal property as is contained in section 4 of that act, but which statute was in force on February 14, 1933, when plaintiff and his aunt agreed to and did execute their mutual wills, and which she revoked by the execution of her last will of date May 12 of that year. It is also argued by plaintiff's counsel that section 4 of the Uniform Sales Act, supra, was not intended to embrace, and is not applicable to, a transaction of the nature here involved; but we are not convinced of the correctness of that argument. As we have seen, an oral promise to devise real estate is embraced by our statute of frauds, and not being in writing, signed by the promisor, it cannot be enforced. The writing therein required embraces "any contract for the sale of real estate" (Ky. Stat. sec. 470, subsec. 6), and the one that is required by the Uniform Sales Act to be in writing with reference to personal property is "a contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards," and it is prescribed that they shall not be enforceable without compliance with the annexed requirements, one of which is that the contract must be in writing and "signed by the party to be charged," etc. None of the requirements was observed in this case. The language of both statutes is in substance and effect the same, and, if the language of the one relating to real estate embraces transactions of the kind and nature now under consideration, we can discover no logical reason why the same should not be true with reference to personal property that might be involved.

The Supreme Court of Maryland in the case of Hamilton v. Thirston, 93 Md. 213, 48 A. 709, so held in applying a similar statute of that state to a similar situation, and the United States Circuit Court of Appeals of the Eighth Circuit in the case of Franklin v. Matoa Gold Mining Co., 158 F. 941, 16 L. R. A, (N. S.) 381, 14 Ann. Cas. 302, construed a similar statute relating to the sale of personal property as embracing an agreement to deliver that class of property in consideration of legal services. To the same effect is the case of Davis v. Carnegie Steel Company, from the Sixth Circuit Court of Appeals, reported in 244 F. 931. In the case of Eigen v. Rosolin, 85 N. J. Law, 515, 89 A. 923, the Supreme Court of New Jersey held that a similar provision of the Uniform Sales Act of that state repealed and took the place of inconsistent provisions

of its prior and long-standing statute of frauds, and which was to say, in effect, that such provisions in Uniform Sales Acts become parts of the Statute of Frauds Acts in states where the sales statute is enacted, one of which is New Jersey, which also has a similar provision with reference to the sale of real estate in its statute of frauds.

But counsel for plaintiff seeks to avoid the effect of either of the statutes referred to by saying that plaintiff performed services for his aunt before our Uniform Sales Act was enacted, and that it should not apply to him. One answer to that contention is that plaintiff expressly alleged in his petition that the performance of services by him to his aunt, as a consideration for her promise to devise to him her property, was abandoned after the death of Thomas J. Maloney, and that a new consideration was substituted therefor, which was that each party should execute to the other their mutual will as agreed upon. However, this contention is based upon the hypothesis that there was an enforceable agreement made by Catherine Maloney to compensate plaintiff for his alleged services at the inception of the assumption of their relationship, when the allegations of plaintiff's pleading negatives any such agreement. The averment is "that she repeatedly stated and agreed (after the relationship was assumed) that she would, in consideration of said services, and intended to bequeath and devise all her property, of every character and kind to this plaintiff," but which would seem to be only a nudum pactum promise made by the aunt to plaintiff after he had taken up his abode with her.

But, notwithstanding that view of the case, and upon the assumption that there was a contract made at the time plaintiff became a member of Catherine Maloney's household, his counsel furthermore insists, in avoidance of the application of *any* statute of frauds, that plaintiff performed his contract by rendering the services alleged and also performed the later alleged contract by executing his will as he agreed to. However, the Gibson Case, supra, and others, expressly hold that the mere execution of wills pursuant to an agreement for mutual wills is not such an all-round performance of the contract as to take the case out of the provisions of the statute of frauds, and for that reason the contention now under consideration may not apply to

the real estate of Catherine Maloney. But counsel strenuously insists that, since plaintiff has fully performed his agreement to render services, the statute of frauds may not be interposed to defeat the right he attempts to assert herein, under the doctrine of the case of Dant v. Head, 90 Ky. 255, 13 S. W. 1073, 12 Ky. Law Rep. 153, 29 Am. St. Rep. 369, and others following and approving it. The rule that part performance operates to take a contract out of the provisions of the statute of frauds so as to permit its enforcement, notwithstanding the absence of a signed writing evidencing the contract, has never been approved or followed in this jurisdiction. On the contrary we have repudiated it, as will be seen from the cases of Gault v. Carpenter, 187 Ky. 25, 218 S. W. 254, and Rhinehart v. Kelley, 145 Ky. 470, 140 S. W. 653. But to that non-accepted rule we have adopted an exception with reference to that provision of our statute of frauds requiring that agreements not to be performed within one year from the making thereof to be in writing, so as to give the contract effect and enforceability where one of the parties has fully performed his part and the other one has by its terms a longer time than one year in which to perform his part, and which was the situation, as well as the character of contracts involved, in the Dant and other cases relied on by plaintiff's counsel.

One of our cases, confining the part performance doctrine to only the character of contract referred to, is that of Beckett-Iseman Oil Company v. Backer, 165 Ky. 818, 178 S. W. 1084, in which we said: "Whatever may be the rule in other jurisdictions, it is the settled law in this state that, with the exception of contracts not to be performed within a year, part performance will not take the case out of the statute, though a party may have equitable rights which he may enforce. Dant v. Head, 90 Ky. 255, 13 S. W. 1073, 12 Ky. Law Rep. 153; 29 Am. St. Rep. 369; Usher's Ex'r v. Flood, 83 Ky. 552; Id. 17 S. W. 132, 12 Ky. Law Rep. 721." Since the alleged contract here involved is not of the class to which the doctrine of part performance applies, the Dant and other cases, supra, relied on by counsel, become and are irrelevant. Plaintiff does not seek remuneration based upon a quantum meruit nor any relief other than specific performance or the impressing of a trust upon the property embraced in the residuary clause of his aunt's will, and which latter is tantamount

574

to, and closely allied with, specific performance. We therefore have no question as to what might be his right, if any, under different procedure.

Other grounds are presented and argued in defense of the action, such as that, the alleged contract being unenforceable as to the real estate of the testatrix, and both it and her will being entireties embracing both personalty and realty, the alleged contract should be construed and enforced as an entirety, since there is nothing to show that it was or is severable as to the two classes of property, and the cases of Grant v. Grant, 63 Conn. 530, 29 A. 15, 38 Am. St. Rep. 379, and Kent v. Phenix Art Metal Co., 69 N. J. Law, 532, 55 A. 256, and some others are cited in support of that contention. Another defense is that the alleged contract, if otherwise valid, should not be enforced because of its extreme unfairness rendering it fraudulent and void, and which is based on the extreme disparity of the ages of the two contracting parties, but we deem it unnecessary to determine either of those defenses, since we are thoroughly convinced, for the reasons hereinbefore stated, (a) that the alleged promise of Catherine Maloney sought to be enforced in consideration of alleged services by plaintiff was not based on a contract in consideration therefor, but was only a promise by her, made after the beginning of the services and after plaintiff had become a member of her family in the manner stated, and (b) that, putting aside conclusion (a), then the alleged contracts were not enforceable because they were not evidenced by duly signed writings as required by the statutes of frauds, supra.

Wherefore the judgment is affirmed.