Verna HAGEN, Plaintiff and Appellant,

v.

Florence SCHLUCHTER and Herbert L. Schluchter, husband and wife, and Harvey Restemayer and Florence Schluchter as executor and executrix respectively, of The Estate of Elizabeth Steinbach, Deceased, Defendants and Respondents.

No. 7978.

Supreme Court of North Dakota.

March 12, 1964.

Dahl, Dahl & Greenagel, Grafton, for plaintiff and appellant.

Burke & Hodny, Grafton, for defendants and respondents.

BURKE, Judge.

In this action plaintiff asked for judgment setting aside certain contracts for deed executed by her stepmother, Elizabeth Steinbach, as vendor to her daughter, Florence Schluchter, and the daughter's husband, Herb Schluchter, as vendees, upon the ground that the execution of such contracts was in violation of the terms of mutual and reciprocal wills executed by Elizabeth Steinbach and Adolph Steinbach, her husband. Upon a trial of the case the trial judge found that the evidence was insufficient to establish an enforceable agreement as to the preservation of the joint estate of the testator and testatrix during the life of the survivor and the disposition thereof upon the survivor's death. Judgment was entered accordingly. Plaintiff has appealed from the judgment and demanded a trial de novo in this court.

Elizabeth Steinbach was the second wife of Adolph Steinbach. The plaintiff, Verna Hagen, is a daughter of Adolph Steinbach's first marriage and the defendant, Florence Schluchter is the daughter and only child of the second marriage. There were two other children by the first marriage who are now deceased. There are also four grandchildren who are the sons and daughters of the deceased children.

Adolph and Elizabeth Steinbach were married in 1907. In 1946, they executed a deed conveying all of their real property to themselves as joint tenants, with the right of survivorship, as is permitted by Section 47–10–23 NDCC, Chapt. 213, Laws of N. D. 1943. At sometime, not shown by the record, the personal property owned by either or both of them was converted to a joint tenancy status as is allowed by Section 47–11–15 NDCC. On January 9, 1953, Adolph and Elizabeth executed the wills which gave rise to the present controversy. The wills have the same subscribing witnesses. They contain similar provisions for the disposition of the property owned by testator and testatrix. Paragraph 1 of each will makes the usual provision for the payment of debts and funeral expenses. Paragraph 2 of each will devises and bequeaths all of the property of the testator or testatrix to the surviving spouse without limitation. Paragraph 3 of each will provides that after the death of the surviving spouse all personal property shall go in equal shares to the daughters Verna Hagen

and Florence Schluchter. Paragraph 4 of each will devises an undivided ¼ interest in all the real property to Verna Hagen, a like interest to Florence Schluchter and an undivided ⅛ interest to each of the four grandchildren. Paragraph 4 also provides that Herb Schluchter, the husband of Florence Schluchter should have the privilege of purchasing a described 80 acre tract of land for the sum of $3,500.00. There is, however, what appears to be a material difference in the 5th paragraph of the wills. In Elizabeth's will this paragraph reads:

"FIFTH, In the event that it should become necessary for the care and support of my said husband that any or all of said property should be sold during his life time, I hereby authorize, empower, and direct my executors hereinafter named to sell the same without furnishing bond. *It being my intention that my said beloved husband shall have the full and exclusive right to all of said property during his lifetime, including the power to sell, to mortgage, or to otherwise dispose of the same."* (emphasis added)

In Adolph's will the 5th paragraph reads:

"FIFTH, In the event that it should become necessary for the care and support of my wife that any or all of said property should be sold during her life time, I hereby authorize, empower and direct my executors hereinafter named to sell the same without furnishing bond. *It being my intention that at all times my said beloved wife shall be provided with all of the necessities of life."* (emphasis added)

Adolph Steinbach died in December 1956, and on February 21, 1957, Elizabeth Steinbach, as vendor, and Florence and Herb Schluchter, as vendees, entered into a contract for deed by which the vendor agreed to sell and the vendees agreed to buy 240 acres of farm land for the sum of $17,-900.00, payable in annual installments amounting to one-fourth of the value of all of the crops harvested on the land. It was specifically provided that this contract should bear no interest. This contract included the 80 acre tract of land which the wills provided should be sold to Herb Schluchter for $3,500.00. The total price was computed by fixing the price of this 80 acres at $3,500.00 and the price of the 160 acres at $90.00 an acre. In the proceedings to determine Adolph's estate tax this land was appraised at $100.00 an acre. Elizabeth also sold Florence and Herb Schluchter a house in Cavalier for $6,000.00 on a contract for deed payable at the rate of $30.00 a month without interest. This house had been appraised at $8,000.00. It is appellant's contention that these sales violated Elizabeth's contract with Adolph not to dispose of any of the property which they had held in joint tenancy except as provided by their wills. While the contracts are a part of Elizabeth's estate, appellant urges that the price at which the property was sold was less than its value, and that she is further prejudiced by the fact that the contracts bear no interest. Elizabeth made no changes in her will.

In view of the fact that all of the property of the Steinbachs was held in joint tenancy these wills were wholly ineffective as devises to the surviving spouse. Neither spouse had any power to devise or place any limitation by will upon the title to which the survivor would succeed by virtue of the joint tenancy. "The joint tenant who survives does not take the moiety of the other tenant from him or as his successor, but takes it by right under the conveyance or instrument by which the joint tenancy was created." 48 C.J.S. Joint Tenancy § 1b, p. 911. Joint tenancy is no estate of inheritance; a joint tenant who dies leaving a surviving tenant has no interest which he may devise. Hoeffner v. Hoeffner, 389 Ill. 253, 59 N.E.2d 684. In re Kaspari's Estate, N.D., 71 N.W.2d 558. Upon Adolph's death, Elizabeth did not offer his will for probate. Instead she took the necessary steps to perfect her title to the real and personal property as the surviving joint tenant. It follows that the

interest of Adolph in the joint property vested in Elizabeth, upon his death, by virtue of the joint tenancy instruments, and that Elizabeth acquired a full and complete title to all of the property unencumbered by any of the provisions of Adolph's will. Therefore, Elizabeth had the right to deal with the property and dispose of it as she saw fit unless there can be spelled out of the two wills and the evidence in the case a valid contract by which Elizabeth agreed that, if she survived Adolph she would preserve the joint property, (except whatever part might be needed to take care of necessities) for distribution in accordance with the provisions of the wills.

The existence of such a valid contract is challenged upon three grounds. First, it is said that the evidence is insufficient to establish such a contract. Second, it is urged that, if a contract be considered to be established, it is void for want of a consideration. Third, that an oral contract to dispose of real property by will is within the statute of frauds and is void in the absence of a memorandum in writing signed by the party to be charged, or of a sufficient part performance.

Upon the first two issues this court is not in agreement, but we are agreed that the statute of frauds presents an insurmountable obstacle to the enforcement of the oral contract if it be conceded that one exists.

Sec. 9–06–04 NDCC provides:

"The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

"1. * * *

"2. * * *

"3. * * *

"4. An agreement for the leasing for a longer period than one year, or for the sale, of real property, or of an interest therein. * * *"

■ An agreement to devise real property is in effect a contract to sell real estate and is included within the scope of subsection 4, supra. 37 C.J.S. Frauds, Statute of §. 100, 597 et seq.; 49 Am.Jur. (Statute of Frauds, Sec. 215) 539; Notten v. Mensing, 3 Cal.2d 469, 45 P.2d 198; Maloney v. Maloney, 258 Ky. 567, 80 S.W.2d 611; In re Wheeler's Estate, 164 Misc. 441, 299 N.Y.S. 945; Kennly v. Kennly, 45 Ohio App. 249, 186 N.E. 853; Tillinghast v. Harrop, 63 R.I. 394, 9 A.2d 28; Rogers v. Joughin, 152 Wash. 448, 277 P. 988; In re Edwall's Estate, 75 Wash. 391, 134 P. 1041; West v. Day Trust Co., 328 Mass. 381, 103 N.E.2d 813, 29 A.L.R.2d 1224.

■■ A memorandum, sufficient to satisfy the statute of frauds, must contain all of the essential or material conditions and terms of the contract. Heinzeroth v. Bentz (N.D.), 116 N.W.2d 611; Kunick v. Trout (N.D.), 85 N.W.2d 438. The party to be charged who must subscribe to the memorandum is the party against whom the agreement is sought to be enforced. Petroleum Exchange v. Poynter (N.D.), 64 N.W.2d 718.

There is no writing, signed by Elizabeth, in evidence in this case, which could possibly be considered a memorandum of an agreement unless it be the will which she signed.

On its face, this will was executed on the same day as a will executed by her husband, Adolph. The two wills were reciprocal in so far as devises and bequests were concerned. While these wills were executed and attested by the same witnesses, there is no evidence in the record as to the circumstances in which they were executed. The attorney who drew the wills and who acted as one of the subscribing witnesses was dead at the time of the trial of the case. What happened to the other subscribing witness was not explained. In any event she did not testify. Whether the wills were drawn at the request of both parties or at the request of one of them, whether the wills were signed at the same time

and place, whether the difference in the wills was known to, or explained to both parties before signing, we have no way of knowing. In fact there is no evidence that Elizabeth knew that Adolph's will was different from hers until after he had died.

■■ While there is a division of authority upon the question, the majority rule appears to be that the execution of a reciprocal will, where the instrument contains no reference to a contract or the terms thereof or to the other will is not a memorandum sufficient to satisfy the statute of frauds. In re Gulstine's Estate, 154 Wash. 675, 282 P. 920; Allen, et al. v. Bromberg, et al., 163 Ala. 620, 50 So. 884; Gibson v. Crawford, 247 Ky. 228, 56 S.W.2d 985; Kennly v. Kennly, 45 Ohio App. 249, 186 N.E. 853; Canada v. Ihmsen, 33 Wyo. 439, 240 P. 927, 43 A.L.R. 1010. Maloney v. Maloney, 258 Ky. 567, 80 S.W.2d 611; Hale v. Hale, 90 Va. 728, 19 S.E. 739. We are agreed that this is the legally sound rule. It is .of the essence of a will that it is ambulatory in character. 4 Page on Wills, 3rd ed., Sec. 1709. Furthermore, our statute (Sec. 56–02–08 NDCC) provides:

"A conjoint or mutual will is valid, but it may be revoked by any of the testators in like manner with any other will."

In view of the nature of wills and of the foregoing statute, an instrument which is wholly testamentary in character cannot be considered as a memorandum of an irrevocable contract to devise property in accordance with its terms even though it appears that a will of another person, making identical testamentary disposition of the same property, was executed upon the same day and before the same witnesses. The execution of reciprocal wills evidences no more than a coincidence of a common intent at the time the wills were executed. Even though such wills were made pursuant to an agreement, the right to revoke would be retained by the testators in the absence of an express agreement to the contrary. The execution of a will which, under the statute, is presumptively revocable cannot be a memorandum of a contract not to revoke.

In this case it is also urged that an oral contract has been established and that the record shows sufficient performance to remove the oral contract from the operation of the statute of frauds. In the case of O'Connor v. Immele, 77 N.D. 346, 43 N.W. 2d 649, we held that where the survivor of the makers of reciprocal wills, pursuant to an oral irrevocable contract, presents the will of the deceased maker for probate and accepts the benefits thereof, there is a sufficient performance of the oral contract to remove it from the operation of the statute of frauds.

■■ In the instant case, however, as has been heretofore pointed out, Adolph left no estate which could pass by his will. Elizabeth, upon Adolph's death, succeeded to his interest in all of the property held by them in joint tenancy by virtue of the instruments creating the joint tenancies. In effect Adolph's will became a nullity. It was not filed or offered for probate and Elizabeth received no benefits from it. There is therefore not a performance here which meets the standard set in O'Connor v. Immele, supra. It is contended, however, that a lesser performance is sufficient and that the execution of the wills alone will suffice.

Corpus Juris Secundum states the rule as follows:

"An oral agreement for the making of mutual wills is not enforceable in equity where nothing more has been done or has occurred than the execution of wills, particularly where they do not refer to each other or to the agreement, since there is not such part performance as to take the agreement out of the statute of frauds." 97 C.J.S. Wills § 1367, p. 313.

In re Edwall's Estate, 75 Wash. 391, 134 P. 1041, it was said:

" * * * The record furnishes no evidence whatever of part performance, unless we regard the mere execution of the wills by both testators as performance. We do not think that the mere making of a will in pursuance of a contract required to be evidenced in writing by the statute of frauds constitutes a part performance of such a contract so as to render the same enforceable."

See also McClanahan v. McClanahan, 77 Wash. 138, 137 P. 479, Ann.Cas.1915D 253; Canada v. Ihmsen, 33 Wyo. 439, 240 P. 927, 43 A.L.R. 1010. In re Wheeler's Estate, 164 Misc. 441, 299 N.Y.S. 945.

Although there are some decisions to the contrary the rule above stated appears to be the majority rule.

We are agreed that it is the rule to be applied in this State. Our statute (Section 56–02–08) provides that conjoint or mutual wills are revocable. No presumption of a contract not to revoke can arise from the mere execution of revocable instruments. While the execution of the wills is consistent with the existence of such a contract it is also consistent with its nonexistence.

It must be remembered that the oral agreement which plaintiff seeks to enforce in this case is not merely an agreement to make wills but also an agreement to keep the wills in force and to preserve the property of the makers for distribution in accordance with such wills. Since wills are in their nature ambulatory the fact that testators may have agreed upon a given date, to make wills which are reciprocal in their provisions, does not mean that they have also agreed to surrender their right to revoke such wills or make other disposition of the property mentioned. The execution of a will is not part performance of a contract not to revoke the will.

Since the agreement which plaintiffs seek to enforce in the case is within the ban of the statute of frauds and it has not been removed therefrom either by a memorandum in writing, signed by the party to be charged, or by a sufficient part performance, the judgment of the District Court dismissing this action is affirmed.

MORRIS, C. J., and STRUTZ and TEIGEN, JJ., concur.

ERICKSTAD, J., not being a member of this Court at the time of submission of this case did not participate.