## Sizemore, et al. v. Davidson, et al.

(Decided February 4, 1919.)

### Appeal from Leslie Circuit Court.

1. **Frauds, Statute of—Parol Contract for Purchase of Land.**—A parol or verbal sale or purchase of land is void and confers upon the purchaser no legal or equitable interest whatever in the land, but only such collateral equities as may arise out of the transaction such as a lien on the land for the purchase money paid, if the possession has been transferred pursuant to the verbal purchase. A parol contract for the purchase of land is unenforcible.

2. **Adverse Possession—Limitation of Actions.**—One who has or claims an interest in land adverse to another in possession thereof, must assert it within the statutory period, and if he fails, his right, whatever it may be, will be barred; and in no case will more than thirty years be allowed for the bringing of such action.

JOHN M. MUNCY and JOHN L. DIXON for appellants.

LEWIS & LEWIS for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

About 1860 Russell Sizemore purchased by parol a tract of land, then in Clay county but now in Leslie county, containing about seventy-five acres, from H. L. Napier; and Sizemore, his wife and three children immediately moved on the tract of land and took possession of it. While Sizemore paid Napier $75.00, one-half of the consideration for the land, there was no writing whatever evidencing the trade. Shortly after Sizemore and his family went upon the tract of land he entered the Federal army, and some time thereafter died in the

service, without ever having returned home. His family were residing on said farm at the time of his death. When the balance of the purchase money became due Mrs. Sizemore was unable to pay it, and she and Napier entered into an arrangement whereby Napier returned to her a part of the money paid by her husband, and she relinquished her claim and surrendered possession of the land to Napier. This was done about 1864. Napier took possession of the land, and in 1868 caused a survey to be made of the boundary for the purpose of appropriating the same as vacant land. Up to that time no survey had been made or patent issued by the Commonwealth for the land; in fact Napier had no title whatever to the land other than his claim as occupant at the time he sold it to Russell Sizemore in 1860. A patent was issued to Napier for the land in 1869, and shortly thereafter he sold it to one Couch and Couch sold it to another man by the name of Couch, and he in turn to another man by the same name, and the last named sold it to appellee, John Davidson. As no deed had been made by Napier, by agreement of the parties, Napier in 1880 executed a deed direct to John Davidson for a part of the land in controversy. The balance of the land was purchased by Davidson from D. K. Rawlings and wife at a later date, and is not seriously claimed by appellants in this controversy. John Davidson married the widow of Russell Sizemore some years before the land was conveyed to Davidson, but they had not lived upon the land in controversy. In fact the widow purchased a small piece of land from her father, Eli Couch, and moved with her family to this tract, and continued to live there some fourteen or fifteen years, the widow marrying John Davidson in the meantime. Shortly after the purchase by Davidson he and the widow and three children moved upon the place, and Davidson and his wife have continued to reside thereon ever since, but the children having become grown, have other homes. This action was commenced by the three Sizemore children against John Davidson and their mother to recover the tract of land mentioned, upon the grounds (1) that they are entitled to the land because their father, Russell Sizemore, made a parol purchase thereof from Napier; (2) they should recover the land because appellee, Davidson, knew the fact that Russell

Sizemore had purchased said land from Napier and had paid him $75.00 thereon, and had moved upon said land, and his family lived thereon at the time of the death of Sizemore, and the deed which Davidson took from Napier, knowing these facts, invested him with the legal title as trustee for the use and benefit of the appellants; and (3) whatever was paid by Davidson, as consideration for the land to Napier, was the money and property of appellants as the heirs of Russell Sizemore, and they having provided the money, a trust resulted in their favor when the title was taken in the name of Davidson. The chancellor entered a decree dismissing appellants' petition, and they prosecute this appeal.

The first and second contentions of appellants may be considered together:

(1-2)   It is admitted that Napier had no legal title to the land at the time he sold it by parol to Sizemore in 1860. It is also admitted that there was no writing signed by the party to be charged and exchanged between the parties with respect to said sale and conveyance. As Napier had no title in 1860, he could convey none, and Sizemore was not, therefore, invested with title to the land. It is urged, however, that the title which Napier acquired in 1869, by grant from the Commonwealth, inured to the benefit of his grantee, and this is the general rule, but does not fit the facts of this case. If Sizemore or his widow and family had remained in possession of the tract of land, claiming it under the parol purchase, and had satisfied the purchase money claim of Napier, Napier would have been powerless, without first adjusting their equities, to eject them from the land even though they held no paper title from him, and his title acquired from the Commonwealth would have become their title; but having abandoned the premises and taken up their abode elsewhere, the parol contract between Russell Sizemore and Napier respecting the land was not enforceable. Sec. 470 Kentucky Statutes; Usher's Exor. v. Flood, 83 Ky. 552; Asher v. Brock, 95 Ky. 272; Elliott v. Walker, 145 Ky. 73; Coffey v. Humble, 154 Ky. 710; Grace v. Gholson, 159 Ky. 362; Beckett-Isemon Oil Co. v. Backer, 165 Ky. 320; Padgett v. Decker, 145 Ky. 227. When the widow voluntarily surrendered possession of the tract to Napier and moved away from the place, there was no right in her or in the

children to the land which the law recognizes. Had she remained on the land she might have successfully resisted any claim of Napier to the property, undoubtedly so until the equities were adjusted.

(3) Appellants insist that Davidson paid for the land with property belonging to their father's estate and to them as his heirs. Davidson says that he paid the purchase price with his own property and money independent of anything which came from the Sizemore estate or appellants. Upon this subject Davidson testified: "Q. How long have you lived on this land? A. I have lived there it will be 36 years in November. The deed was made there in October and I moved there on the 22nd of November, 1880. Q. State whether or not you have ever lived at any other place since you moved there? A. No, I have never lived any other place. Q. What have you used this land for during all the time that you have lived on it? A. I have used it for farming purposes and have taken the timber off it, that is a part of the timber, and there.has never been any disturbance about it, everything was quiet and peaceable. Q. State whether or not the plaintiffs or any other person have ever claimed this land since you moved onto it? A. I never heard anybody claim it until about three or four years ago. Q. What patent covers this land that is in controversy? A. Patent in the name of H. L. Napier. Q. Under what patents do you claim the land embraced in this deed? A. I claim it under the H. L. Napier patent and a patent in the name of John Couch. Q. From whom did Bill Couch buy this H. L. Napier patent? A. He bought it from Carr Couch and Carr bought it from John Couch, and John Couch bought it from H. L. Napier. After I bought this land and paid for it we all got together, me and John Couch, Carr Couch and Bill Couch, and we held a counsel over it, about how we would have the deeds made; there hadn't been any deeds made, and we all agreed to save expense—for Hugh Napier to make the deed to me, instead of making deeds all down through the Couches and then them making the deed to me. And H. L. Napier did make me the deed referred to and which will be filed. At the time we all agreed that the deed should be made to me, John Couch give me a bond or some sort of writing authorizing H. L. Napier to make the deed to me and when I give him that writing he made

me the deed. Q. State whether or not it was the understanding between you and the Couches and H. L. Napier that you were buying and getting a deed for all the land that was covered by the H. L. Napier patent? A. No, sir, I wasn't getting it all. I was getting it from the two poplars mentioned in the deed and from there up on both sides of the branch to the graveyard, except about a quarter of an acre around the graves. I was getting all the land in the H. L. Napier survey except from the poplars down; from there up I got it all except from the poplars down; from there up I got it all except that around the graves. From the poplars down Napier had sold to John Couch and he had sold it to D. Y. Lyttle and he gave it to his daughter, Mrs. Rawlings, and she and her husband, D. K. Rawlings, deeded it to me. Q. State whether or not John Couch ever made David Y. Lyttle a deed to the land below the poplars down, spoken of? A. He made it from the poplars down along the whole boundary that he owned down there himself. Q. Tell the court who paid for the land that H. L. Napier conveyed to you? A. I paid William Couch. Q. In what did you pay him? A. I paid him a filly that I got from Bige Sizemore as the first payment, and the second was a cow that I bought from Judge Alex. Begley. I traded him bee gums for the cow. The third payment I sold a horse to George Steele for $50.00 in school claim and he give me an order to Bill Hall, who was school commissioner, and I sold the school claim to Capt. Eversole and I sold Bill Couch $35.00 in the store, and that was the last payment on the land. Q. Whom did you pay for the land you got from Rawlings? A. I paid Dan Rawlings; I let him have a yoke of big cattle for the land. Q. How did you pay Bige Davidson for the young filly you let Bill Couch have? A. Me and my wife had bought a piece of land from her father, Eli Couch, before that time, and Bige Davidson said if I would not have my name in the deed that Eli Couch was to make he would let me have the filly, as I had raised her and give her to him, he would let me have her back. I went and fetched the clerk to my house and he stayed all night and the next morning I went over to Eli Couch and got him and his old woman to come over to my house and make the deed to my wife and three children. After that time, Taylor Sizemore and Sis North and Bige Sizemore and

Taylor Sizemore finally got all the Levi Couch land, and after that time he sold it to Captain Eversole, and Eversole sold it to some land company. Q. Which three children did you direct Eli Couch to make the deed to? A. Taylor Sizemore, Bige Sizemore and Haley Sizemore; now she is Sis North. Q. Were these three children the only children of your wife, by her first husband? A. They are the only ones I ever seen or heard of. Q. State whether or not you ever paid any money or property that belonged to any of the plaintiffs for this land? A. I did not. Every copper come through me. I never paid any money in it all. I paid for it as I have told you before. Q. State whether or not you ever at any time since you have bought this land got a deed for it; you ever held out to the plaintiffs, or told them that their money and property had paid for the land and that the land belonged to them and that you were going to deed and convey it to them? A. I never said that to them nor anybody else. Q. State whether or not you ever at any time told the plaintiffs or indicated to them in any way that the land belonged to them, or that you and your wife only had a life estate in the land? A. I never did."

The appellants were very young at the time Davidson purchased the land and are unable to give evidence with respect to the transaction or the payment of the purchase price, except hearsay. At the time Taylor Sizemore gave his deposition he was 54 years of age, and Mahala, now called Sis North, was 53 years old. They undertook to relate many circumstances which had been told them by older people, and some statements which they attributed to their mother and to Mr. Davidson. For instance, they say that their mother and Mr. Davidson frequently told appellants they only claimed a life interest in the land and that the fee in the land belonged to appellants. This, however, is emphatically denied by both Mr. Davidson and the mother of appellants. Davidson also testifies that he paid a certain cow on the price of the land and that this cow was his own property which he had acquired from a man by the name of Begley. He also explains in detail how the balance of the purchase money was paid, and without equivocation. From the evidence we are persuaded that while appellants are claiming in good faith, they are relying chiefly

upon hearsay and are wholly without knowledge of the real facts of the controversy, because they were not old enough to know the facts with relation to the land transactions in 1860 up to 1880. On the other hand Mr. Davidson and his wife tell the facts in detail. We are convinced that Davidson provided the money with which to pay for the land and not the appellants. At any rate he purchased it in 1880 and moved on it some thirty-four years before the institution of this action. At that time some of the appellants were almost grown, and the youngest one must have been at least seventeen or eighteen years of age. Thus calculated, all the appellants had attained their majority more than thirty years before the commencement of this action. Their claim was, therefore, stale at the time they undertook to assert it. It was their duty, after having attained their majority, to declare their right to the land, and if it was denied, to have enforced it in a court without unreasonable delay. This they failed to do, and having slept on their rights for more than thirty years, they will not now be heard to claim the land to which their right in the first instance was very doubtful.

Judgment is affirmed.