## Murray, et al. v. Boyd, et al.

(Decided June 18, 1915.)

### Appeal from Johnson Circuit Court.

1. Contracts—Sale of Standing Timber—Branding.—The title to standing timber passes as between the parties with the execution of a written conveyance, but to affect the interests of creditors or innocent purchasers, it is necessary that it be branded.

2. Contracts—Sale of Standing Timber—Branding.—Under Section 1409, Kentucky Statutes, with reference to branding of timber, the purchaser of the timber or owner of the brand, and the seller should act jointly in placing the brand. If timber sold be of a certain kind or dimension, neither party, to the exclusion or prejudice of the other, can arbitrarily designate the timber by branding.

3. Contracts—Sale of Timber—Waiver—Estoppel.—Either party to a written contract may orally waive stipulations in it, particularly when such stipulations are outside of the statute of frauds, and where a party to a written contract for the sale of timber which provided that the same should be branded within two years from the date of sale, agreed that the same need not be branded, he not only waived the requirement to brand within that time, but the same amounted to an estoppel, for he would not be permitted to lull the purchaser to sleep with an assurance that he need not brand the timber and then deny the right after the time had expired in which, under the writing, they might have branded it.

4. Contracts—Want of Authority—Pleading—Appeal.—Where one of the appellants has been exercising and assuming authority to act for his co-appellants by making contracts with various parties about the land in question, and denying certain rights to the appellees, and his conduct, although known by the other appellants, had never been questioned and no want of authority was plead, it is too late to raise that question on appeal.

VAUGHAN & HOWES for appellants.

JOHN W. WHEELER and C. B. WHEELER for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming on original and cross-appeal.

The appellants, R. H. Murray, and his brother, Betheley Murray, brought this action to enjoin the appellees, "from cutting or removing from the tract of land described any timber that they did not brand before the 21st day of June, 1912," and to enjoin them "from branding any timber on such land not branded before June 21st, 1912." They alleged that they are and were the owners of a certain described tract of land in

Johnson County on the Lick Fork of Chestnut Creek, and that on the 21st day of June, 1910, they sold to the defendants, "all the timber of every kind, except the chestnut and beech and except the poplar under eighteen inches, measured under the bark, three feet from the ground, and on the upper side, and except all the oak which will not make two first-class standard cross-ties, the exclusive right to cut, make and dig any and all roads and ways for the purpose of cutting, removing, and hauling the timber from said land, and the right to enter upon said land, and the right to use any part of the surface thereof necessary in cutting, hauling and removing said timber, and the right to erect, use and maintain, and remove therefrom at pleasure all houses, shanties and other buildings necessary in cutting, removing, and hauling said timber after it has been sawed, over, along, and upon any part of the surface of said land, and the right to place and put the said timber or logs upon the banks of the creek and branches at any and all points or places on said land. The said timber was to be removed from said land within two years from date of sale, and if not removed within said time the defendants were to pay a rental of $50 per year for all time, after the expiration of two years, that they failed to remove said timber or its products. All the timber was to be branded within two years from the date of sale." They further alleged that pursuant to the contract, the defendants entered upon said premises within the two years mentioned, and cut and removed a large amount of the timber purchased, but that, although the two years "expired on June 21st, 1912 (the suit was filed August 5th, 1912), they are now threatening to brand, cut and remove and are actually engaged by themselves and agents wrongfully, unlawfully, and without right or authority so to do, and without the consent and against the will of plaintiffs, in branding, cutting, and removing the remaining timber from said land, that has never been branded, claiming that it is their timber, although they have never branded it or had same branded."

The defendants by answer set up the contract in full, and these further facts appear from it. The defendants paid $2,100 for the timber, and they were also given the right-of-way and all switch privileges on the land near the mouth of Johnson Creek adjacent to the Chesapeake & Ohio Railway, but they were limited to

hauling thereon the timber conveyed to them by plaintiffs. It will be seen that under this contract, the defendants purchased all the timber except the chestnut and beech, and the poplar under 18 inches, and the oak which was not of sufficient size to make two standard cross-ties, and paid a lump sum therefor. It is not contended that the defendants intentionally took, or did take any material amount of the timber excepted from the contract. The defendants having purchased all the timber subject to the exceptions named, of course, wanted all they purchased. On the other hand it was to the interest of appellees under this character of trade to have the defendants take as little of the timber as possible, or at least no more than the contract permitted. While two years' period for removal was contemplated, really, an indefinite time, by payment of $50 annual rental, was allowed for that purpose, but since the poplar and oak that was too young or too small to be included within the provisions of the contract would grow to the designated dimensions, if the time of removal was indefinitely extended, the contract stipulated, for protection of the plaintiffs, that all timber sold should be branded within two years. From the reference we have made to the petition, it will be observed that the plaintiffs say in effect that the defendants failed to brand within the two years all of the timber purchased, and the ground of the action is a claim of forfeiture to that extent. The object of branding being made manifest by the character of the contract, the question might have been raised as to whose duty it was to do the branding, if, in fact, it was not a duty imposed upon both parties. While the title passed as between the parties with the execution of the written conveyance, yet to affect the interest of creditors or innocent purchasers, it was necessary that it be branded. Burris v. Stepp, 162 Ky., 269; Kentucky Statutes, Section 1409, Sub-sections 13 and 14. But no rights are involved in this case other than those of the contracting parties. Section 1409, with reference to branding, makes it clear that the purchaser, or owner of the brand, and the seller should or may act jointly in placing the brand. That is, if timber of certain kind or dimension be sold, neither party, to the exclusion or prejudice of the other, can arbitrarily designate the timber.

The defendants, however, by their answer and counter-claim, waive this point, for they admit, "that the

two years in which *they were* to brand the timber that they bought and desired to remove from said land had expired on the 21st day of June, 1912." They also admit that they had not branded all the timber which they purchased, and say that it is true they were preparing to brand and remove it at the time the petition was filed against them. They then proceed to justify their failure to brand with the averment that:

"A long time after they entered upon the land * * * and had branded and cut and removed all the poplar timber, the plaintiff, R. H. Murray, and these defendants entered into an agreement or arrangement by which they, the plaintiffs, agreed to dispense or do away with that part of the contract which required their branding of this timber, and that it was agreed by and between the parties hereto that the poplar timber had been branded, cut and removed, according to the terms of the contract, and it was only the timber that was to be of a certain size, the oak which would not make two first-class cross-ties, it would not be necessary to further brand said timber as these defendants were entitled to all timber of any size save the oak as heretofore set out."

They further aver by way of counter-claim, that a large portion of the timber to which they were entitled had already been severed from the ground, and still remains there and is going into decay. They claimed damages from appellant's denial of permission to market it. They also say that notwithstanding the grant of exclusive right-of-way to, and switch privileges at the mouth of Chestnut Creek on the Chesapeake & Ohio Railway, the plaintiffs thereafter sold or leased a right of way over the same land for tram, yard and switch purposes to the Ironton Cross-tie Company, and said company built a tramway along the creek, and thus occupied the only means of ingress and egress to the railroad, forcing the defendants to market a considerable portion of their timber by river rafts. They claim the plaintiffs refused privilege of mill-sites on certain of the lands, and that in various other ways they so hindered and delayed the defendants in the removal and marketing of their timber as to damage them in the sum of $2,265, and for which sum they prayed judgment over against plaintiffs. The defendants filed several amended answers and counter-claims, setting up with greater particularity the defenses already referred to. By

agreement the plaintiffs controverted of record these amended answers and counter-claims. The lower court dismissed the petition and adjudged:

"That the damages sustained by the defendants as claimed in their counter-claim are offset by the damages sustained by the plaintiff by reason of defendants cutting timber under size, and no judgment is rendered for any damages in favor of either party herein; and it is further adjudged that the defendants are not entitled to an injunction as asked for in the petition because the testimony shows that the timber was not branded for the reasons that the plaintiffs had consented that the same need not be branded and plaintiffs' petition is now dismissed."

The judgment further required the parties to brand the timber within 60 days from date. "Either party may brand it, but, before doing so, they shall give the opposite party reasonable notice of the time," so that they may be present. "If the party so notified fail to appear and help brand the timber, the party giving the notice and proposing to brand the same may go ahead with the work of branding." Before removing any of the timber, the court adjudged that the defendants pay $50, one year's rental, and $50 a year in advance until the timber is all removed. The plaintiffs appeal from this judgment and the defendant brings a cross-appeal, claiming that the court erred in rejecting or offsetting their claim for damages.

As already noted, the ground of this action was for cutting and removing unbranded timber after the expiration of two years, and for attempting to brand timber after that time. Plaintiffs claimed no damage against defendants for cutting undersized timber. Some proof was heard on these questions, however, and it showed that there was some damage on this account, although not a very material amount. No market values or dimensions were shown by which to measure the damage. The defendants likewise failed to give in proof any details as to decline in market values, or size, dimensions, or quantity of the timber. However, it was established that they suffered considerable damage on account of plaintiffs' violation of the contract. They were denied advantageous mill-sites; plaintiffs violated their contract when they subsequently sold the switching

privileges and tram-road right-of-way to the Ironton Company. Steep hills or cliffs are close to the creek on each side. There is room for only one tram-road, and this is the only outlet for the timber to the railroad. The Ironton Company occupied this. The defendants, after considerable delay and some expense, arranged with the Ironton Company for the right to use this tram-road. While the defendants unquestionably sustained considerable damage on these accounts, yet, as already stated, they were not presented in such a form as to give the court a basis for measurement of them. They excuse, however, the delay in cutting and removing the timber.

Defendants prove by numerous witnesses that R. H. Murray in April, 1911, in answer to a verbal request to join defendants in branding the timber, said that it would not be necessary, because defendants "had bought all the timber that was worth anything, and he didn't consider there was any use of branding it." Murray did not deny this conversation. This question was asked him:

"Q. Did you not say to Boyd and Matney in the presence of Allen Dutton, Harrison Borders, and probably some more, that they had the most valuable timber off of the land already, and that they owned practically all of the rest, except that that would not make two standard cross-ties and for them to go ahead as though it was branded, and they could consider it branded? A. I don't remember of ever having any such talk; but it is possible that I did give a man that lief. Q. Why did you not brand it? A. I don't know."

Appellants say that this was evidence of a subsequent parol agreement for the purpose of varying and contradicting a written contract, and one which by law is required to be in writing. Evidence of it was, therefore, incompetent as they argue. They also contend that appellees cannot "plead and rely upon such parol agreement as an estoppel against the other appellant Betheley Murray." In the first place, we may say that this evidence as to the subsequent oral contract which, in reality, is nothing more than a waiver, was not objected to. Any error in that regard is therefore waived. It is a well settled rule that a contract not required to be in writing may be discharged or modified by subsequent oral agreement, and that the parol evidence rule does not exclude oral evidence thereof in a proper case. Chiles v. Jones, 3 B. Mon., 51; Home Ins. Co. v. Gad-

dis, 3 Ky. L. R., 159; King v. L. & N., 131 Ky., 46; Elliott on Contracts, 1861; Bishop on Contracts, Section 767. And a contract required to be in writing may be rescinded by parol agreement. Warden v. Bennett, 145 Ky., 325; Keeney v. Waters, 135 Ky., 525; Davis v. Benedict, 9 Ky. L. R., 200. But as to modification of such contract by parol the rule is more strict. If the contract is required to be in writing, evidence will not be admitted to prove a subsequent parol agreement which materially modifies the writing, that is, if the subsequent agreement is itself within the statute of frauds, and of a nature required by law to be in writing. Elliott on Contracts, Section 1862.

In the case at bar, the subsequent agreement is only a verbal waiver or rescission of a clause in a written executory contract, and the clause does not relate to any subject required by law to be in writing. While the sale of timber was necessarily reduced to writing, and the parties incorporated into the writing other subsidiary or incidental agreements, yet the force of the contract of sale was not affected by the other conditions, and a subsequent parol agreement with reference to them cannot properly be said to be within the statute of frauds. To illustrate, if one by written contract sells a certain boundary of land, and the contract provides for a subsequent survey to ascertain the boundary before payment is required, a subsequent parol agreement for the sale of more land would be within the statute of frauds and, therefore, not enforcible. But if the subsequent agreement merely postponed the time of payment or waived or rescinded the agreement for survey, there is no reason why that character of agreement would not be binding, since the statute of frauds does not require agreements in relation to such subjects to be in writing. If the parol modification would otherwise be enforcible, its validity is not affected although it is incident to a written contract which concerns a subject that the law requires shall be in writing. Apparently a contrary rule was thus stated, in McConathy v. Lanham, 116 Ky., 735:

"While the question is not free from difficulty, we think the great weight of authority is to the effect that a written contract, within the statute of frauds, cannot be modified by subsequent agreement between the parties, unless such new agreement is also in writing."

But an examination of the case shows that the statement has reference to a modification that went to the very essence of the contract and obligated the party to buy land, and the time when it was to be paid for was more than a year off. It was that character of modification which the court held invalid because not in writing. It is clear that contracts of that character, are not enforcible unless in writing.

The facts of this case show that appellants waived the requirement to have the branding done within two years. Their conduct also amounts to an estoppel. For appellants would not be permitted to lull the appellees to sleep on the assurance that they need not brand the trees and then deny the right after the time had expired in which, under the writing, they might have branded them.

Appellants say that even if this be true, the waiver could only affect R. H. Murray. They say that there is no proof that Murray represented or had authority to bind his brother in the contract and, therefore, it can not be said that the brother waived or is estopped to insist upon the contract as written. The answer of defendants showed that this waiver was made by R. H. Murray. The plaintiffs merely controverted this of record and stood upon that issue. R. H. Murray in his testimony didn't deny it. Plaintiffs did not plead want of authority in R. H. Murray. The facts in evidence show that he was exercising general authority. He made various contracts with sundry people concerning this land and denied several contract rights to the defendants. Such conduct on his part was known to the other brother but was never questioned; and it is too late now to raise it.

For the reasons stated, the judgment is affirmed both on the original and cross-appeal.