## Smith v. Cloyd.
### (Decided May 24, 1935.)
### (As Modified on Denial of Rehearing Sept. 27, 1935.)

WILLIAM LEWIS & SON for appellant.

C. R. LUKER and ROY W. HOUSE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Mr. Smith sued George W. Cloyd for $560 alleged to be due him for rent; Cloyd denied owing anything and asserted a counterclaim. The jury gave Mr. Smith nothing, and gave Cloyd all he asked. Mr. Smith appeals. Mr. Smith leased to Cloyd the lower floor of a building in Somerset for five years for a rental of $40 per month, for the conducting of a pool and billiard parlor. Cloyd occupied the building and paid the rent until May 1, 1933, then moved out. Smith was unable to rerent the property and sued Cloyd for 14 months rent of $40 each.

This lease was in writing, and, aside from allowing Cloyd to occupy the premises for five years, imposed no obligation on Smith to do anything. Cloyd had not been in the property previous to renting it.

When Jess Cloyd, the brother and agent of George, came to move into the property, he found it freshly painted and papered, but found the floor in bad condition; he testifies it had been leaked on, had holes in it, and was dangerous to walk on. He testifies he refused to move in and notified both his brother and Mr. Smith that before moving in he would have to have a new floor, the roof fixed, screens, and other things. Some correspondence and delay resulted.

### The Supplemental Contract.

Mr. Jess Cloyd testifies that he, as agent of his brother, made an agreement with Mr. Smith that Cloyd should buy the lumber for a new floor and Smith should pay for laying it, fix the leaks, and whenever anything was needed to be done, he would have it done.

Cloyd bought the flooring and Smith laid the floor, but that was all he did. Cloyd had the doors and screens repaired at a cost of $18, and he says this about the leaks:

"It leaked in several places, in the front it had one leak, there were two or three back in the center, in the back it was just like a branch."

Water and plastering fell from the ceiling and damaged the tables. Smith kept promising to fix the roof, but never did. The injury to the tables, $200, and the cost of the screening, constitute the counterclaim.

## The Issue Submitted.

The court in apt and elaborate language told the jury to find for Smith $560, unless they should find from the evidence that before Cloyd took possession under the written contract Cloyd and Smith made a supplemental contract for Smith to make all necessary repairs and keep the building and premises in repair, and that Cloyd was forced to move out because the building had become untenantable, from Smith's failure to repair, and if they did so find from the evidence, they could find for Cloyd on his counterclaim.

## Errors Alleged.

Smith objected to and has attacked these instructions, the counterclaim, and the evidence thereof, and cites many authorities to support his position. The basis of all this is that the court has allowed the terms of a written contract to be varied by parol. The written contract does not mention the floor, the roof, or the screening. These parties were just as capable of making the second contract as they were the first one; they were entirely free to do so, and the jury has found they had done so.

"The execution of a written contract does not preclude parties from thereafter making an oral supplementary contract." 13 C. J. p. 593, sec. 609; 22 C. J. p. 1256, sec. 1674; Caskey v. Williams Bros., 227 Ky. 73, 11 S. W. (2d) 991; Paducah Grain, etc., Co. v. Marshall, 196 Ky. 673, 246 S. W. 30; Murray v. Boyd et al., 165 Ky. 625, 177 S. W. 468. Of course, as pointed out in this last-cited case, the second contract must itself be a valid contract.

## The Statute of Frauds.

Smith relies on section 470 Ky. Stats. to defeat this supplemental agreement. That statute applies to seven kinds of contracts. This supplemental contract is of the seventh kind, and the statute as applicable here is:

"*No action shall be brought to charge any person * * * upon any agreement which is not to be performed within one year from the making thereof, unless the promise * * * be in writing, and signed by the party to be charged,*" etc.

Now it will be observed this supplemental contract re-

quiring Smith to keep this building in repair was to run five years, and was not in writing; therefore, Smith says it is unenforceable.

This statute was passed in England in 1676, and it soon found its way to America. In spite of its age, it has never fully soaked into the consciousness of all men, and we find every day where men have made contracts that are within the statute of frauds without reducing them to writing. This supplemental agreement is such a case. It often happened that one of the parties would perform his part of the contract and the other would refuse and shelter behind the statute, so that it soon appeared that the statute enacted to prevent fraud had become the means of furthering fraud and making it profitable and secure. It seemed a monstrous thing, after a party had got all he was to get by an oral contract, not to compel him to perform his part of the contract. The courts of equity devised the doctrine of "part performance" to meet such a situation. See 27 C. J. p. 353, sec. 427 et seq., and 25 R. C. L. p. 461, sec. 38. This commonwealth has never adopted the doctrine of "part performance" except as to contracts not to be performed within a year, as this one is. See Maloney v. Maloney, 258 Ky. 567, Dant v. Head, 90 Ky. 255, 13 S. W. 1073, 12 Ky. Law Rep. 153, 29 Am. St. Rep. 369, and cases there cited.

Perhaps neither party to the supplemental parol contract, before either one performed his part thereunder, acquired any enforceable rights thereby. However, defendant did perform the obligation imposed on him by that supplemental agreement when he furnished the lumber for the flooring of the building, and which he was not required to do under the original written lease, and which fact disposes of plaintiff's contention that the supplemental parol contract, if made, was not supported by a valid consideration, since, as he contends, it did not affect the obligations and duties of defendant that he assumed under the original written lease. The furnishing of the lumber, by Cloyd, as stated, was clearly something that the original lease did not impose upon him and which was a new consideration on his part sufficient to support the oral contract which was fully executed on his part, and which modified the written contract.

But it is insisted that the evidence is not sufficient

to establish any such relied on parol modification of the original written lease; however, we cannot agree with that insistence, since we conclude that the testimony was not only sufficient to authorize the submission of that issue to the jury, but likewise sufficient to support its verdict finding that such modfication was entered into by the parties.

Wherefore, for the reasons stated the judgment is affirmed.