## Utilities Electrical Machine Corporation v. Joseph E. Seagram & Sons, Inc.

May 22, 1945.

70

Dodd & Dodd for appellant.

Ogden, Galphin, Tarrant & Street for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appellant, plaintiff below, was an Ohio corporation engaged in buying and selling secondhand machinery in the capacity of "dealer," under proper certificate issued to it by the Federal OPA. Appellee, a distillery corporation, was at times engaged in the manufacture of alcohol for war purposes, and entitled to priorities in the procurement of equipment in the operation of its plant when thus engaged. Since the petition undertakes to plead facts in respect of the transaction, it is not amiss to incorporate them in more or less detail. Plaintiff alleged that on July 9, 1942, it received a letter from Seagram "requesting this plaintiff to locate for and on behalf of defendant a certain type of boiler," needed in carrying on its business. Negotiations followed and as a result plaintiff offered to Seagram one 571 h. p. Connelly boiler, a coal boiler at $6,500, to be loaded at Seagram's expense, predicated upon a commitment that they would purchase the boiler and include the plaintiff in the release procured from WPB, authorizing it (Seagram) to purchase this boiler, so that plaintiff might be vested with title, and in turn vest Seagram with the title.

It was alleged that it explained to Seagram the necessity of the plan, since under general limitation Order No. L-102 WPB, plaintiff was prevented from buying or optioning the boiler until commitment be made by Seagram that it would purchase and include plaintiff in the release. It was alleged that Seagram informed plaintiff that it was familiar with Order L-102, and would recognize plaintiff as dealer in the transaction, procure from WPB a release directing that "the vendor of the boiler," sell it to plaintiff, who would in turn resell to defendant, and would negotiate exclusively with plaintiff. As a result of these negotiations plaintiff

sent to Seagram a complete description of the boiler "sought to be purchased from it by defendant." Plaintiff then says that as a result of negotiations, Seagram sent its representative to its home office for the purpose of inspecting said boiler, and files with its pleading a telegram dated November 4, 1942, addressed to plaintiff: "W. A. Ranzenberger will call on you tomorrow to inspect Connelly boilers." Plaintiff said that "as a result thereof" it took Ranzenberger to the plant of the Ohio Public Service Company, Sandusky, Ohio, where after inspection the representative approved the boiler, and stated that he would recommend its purchase, and asked plaintiff to confirm the price of $6,500 to the defendant at Louisville, "as is," inasmuch as defendant might desire to handle the dismantling and loading of the boiler. Following this, says plaintiff, it confirmed the $6,500 "as is"; removal at defendants' expense, and "in line with previous negotiations," to obtain and furnish from WPB a release in compliance with Order No. L-102.

It plead that "simultaneously therewith and in compliance with the direction of the representative, it executed its purchase order to the Ohio Public Service Company covering one 571 h. p. Connelly boiler, located at its plant, at the price of $3800, and enclosing its check for $1,000 as initial payment, notifying the Company that the boiler was to go to Seagram, and that it, Ohio Company, would procure from Seagram the necessary priorities and release from WPB." The Ohio Company accepted the order and initial payment, subject to procurement of release, and gave plaintiff "five days" time to procure the release order.

It is then alleged that defendant, in spite of communications from plaintiff, failed to procure the release "which was a part of the contract of sale"; later, on November 14, 1942, plaintiff received notice from the Ohio Company that they had received release authorizing it to sell the boiler direct to Seagram without compliance with Order No. L-102, thus not enabling plaintiff to receive the boiler and in turn make delivery.

On November 17, plaintiff was informed by the Ohio Company that Seagram had sent its order direct to the Ohio Company for the purchase of the boiler for $3,800. It was alleged that Seagram knew that because of ex-

isting government regulations plaintiff could not purchase the boiler from Ohio Company, unless Seagram requested proper authorization. It was said that after "negotiating" with plaintiff, after confirmation of price and inspection, Seagram violated its agreement to procure release, thus circumventing its effort to qualify as a dealer, and to seize the advantage and breach its contract, and avoid the payment of the $2,700 profit it would have made had the contract been carried out; plaintiff asked recovery for that sum as damages because of the alleged breach.

Defendant moved the court to require plaintiff to state the name of the alleged authorized representative, and to require it to file the letter of date July 9, 1942. Without a ruling, plaintiff complied by alleging that Ranzenberger was the representative referred to, and attached to its pleading the letter addressed to plaintiff at Cleveland. We insert only the pertinent portion: "Gentlemen: We acknowledge receipt of your letter of July 6. We are not at this time interested in any turbo generator unit, but we are endeavoring to locate the following powerhouse equipment: One 500 h. p. 200 to 250 lbs. per square inch sterling type boiler equipped with an under feed stoker. * * *" (There follows several items not involved.) "Kindly let us know if you have available or can locate any of this equipment."

By answer defendant admitted allegations as to its corporate character, its business, and that it had written the letter quoted above; that it was familiar with W.P.B. Order No. L-102; that on November 4, 1942, it sent the telegram as to inspection by Ranzenberger, and that he, on November 6, 1942, inspected the boiler, and thereafter plaintiff wired its price of $6,500 on the boiler, and requested response. The telegram to Seagram's Director of Purchases reads: "Referring to the 571 h. p. Connelly water tube boiler, your W. A. Rosenberger inspected yesterday at Sandusky, Ohio. Our price is $6500 cash as and where is, removal to be made at your expense. You are to obtain and furnish for us W.P.B. release under Order No. L-102. As requested by Mr. Ranzenberger we are mailing outline print covering this boiler installation. Wire if we shall enter order."

On November 12, Utilities Company wired Seagram: "Referring to the 571 h. p. Connelly boiler offer-

ed in telegram Nov. 2 and 6, * * * and inspected by your W. A. Ranzenberger. In view of other negotiations pending essential we have immediate wired decision to our proposition."

This was followed by a letter from Utilities to Seagram dated November 16th, "Confirming phone conversation this a. m. with your C. P. Greagh relative 571 h. p. Connelly * * * boiler at Sandusky. The Power Company advised us they received telegraphic release from Director General of Operations W.P.B. Please wire N. C. Foster, Purchasing Engineer Ohio Company, Hannah Building, Cleveland, that negotiations covering sale of this boiler are through us since it is necessary the Power Company, as well as ourselves, secure release under Par. B-2, Limitation Order L-94 and L-102, and advise Board accordingly."

This was followed by Seagram's letter to plaintiff: "We acknowledge receipt of your wire of Nov. 16. Inasmuch as the W.P.B. authorized the Ohio Service Company to sell the 571 h. p. Connelly boiler to us, it was necessary that we place our order directly with them. This particular boiler was offered to us by three different dealers and we accepted the lowest offer. Our order with the Ohio Company was based on this offer."

Answer of Seagram, in paragraph one, making the admissions stated, denying in toto all other allegations plead facts based upon the above communications, making the documents part of its pleading. In a second paragraph it plead that it had purchased the boiler through Barry, a dealer in Chicago, at a total cost to them of $4,000, a profit of $200 to Barry, and that the W.P.B. made release to the Ohio Service Company for sale and delivery to defendants. It then alleged that if there existed a contract of sale, it was void because consideration of the sale was in excess of $500, and the seller did not deliver the boiler to defendant, and defendant did not accept the boiler from plaintiff, and nothing was given in earnest, or in part payment to bind the alleged contract, or in part payment, nor was there any memorandum in writing signed by the party to be charged, or its agent on their behalf. If it be conceived that there be a contract, if made in Kentucky, Section 361.040, KRS, applies; if made in Ohio, Section 8384, Throckmorton's Ohio Code, Ed. 1940, Supp. 1942, applies. Both

statutes place a sale not made in accordance with their terms, within the statute of frauds; the two are identical in phraseology, except as to the value of the goods, our statute fixing the limit at $500; the Ohio Code at $2,500.

Appellant demurred only to paragraph 2, particularly that portion which attempts to plead a bar. The cause was submitted on demurrer to "paragraph 2" of defendants' answer; the court overruled the demurrer; carried it back to the petition and sustained it, because "defendants' exhibits, telegrams and letter from plaintiff to defendant are conclusive that no contract existed between the parties, and for that reason plaintiffs' petition does not state a cause of action against defendant, as the allegations of the petition can rise no higher than defendants' exhibits 1, 2 and 3, which by demurrer are admitted to have been sent by plaintiff." Thirty days were given for plaintiff to amend. At the expiration of that time, no amendment having been tendered, a final order dismissed the petition as amended.

As stated the court overruled demurrer to paragraph 2 of the answer, thus indicating that it stated a good defense, had petition stated a cause of action. Appellant contends that it did, and that there was memoranda sufficient to comply with the Sales Act, and that part performance took the case out of the fraud provision of both the Kentucky and Ohio laws. If it be held that a binding contract is manifested, the part performance contention is not applicable, as the rule in this jurisdiction is to the contrary, except in cases where the one year provision applies. Maloney v. Maloney, 258 Ky. 567, 80 S. W. 2d 611; Smith v. Cloyd, 260 Ky. 393, 85 S. W. 2d 873; Wilson v. Adath Israel C. & E. Ass'ns Agent, 262 Ky. 55, 89 S. W. 2d 318, in each of which Dant 'v. Head, 90 Ky. 255, 13 S. W. 1073, 1075, 29 Am. St. Rep. 369, is distinguished.

We have recited above the substance of the allegations of the petition. It is not necessary to take them up singly for discussions, in order to demonstrate that the whole does not state a cause. An analysis shows no more than inquiry, an investigation, a series of negotiations which never ripened into a binding contract. Perhaps the most forceful allegation is that paragraph of the petition which states that following the letter (of inquiry) "negotiations were had * * * as a result of

which this plaintiff offered defendants (the boiler) for a price of $6500 * * * predicated upon a commitment that it would purchase the boiler from plaintiff, and include plaintiff," in the WPB release. It is nowhere alleged that this offer was ever accepted. Here the offer to sell was predicated upon a commitment that defendant would buy, even though the price might not be agreeable, and we find nothing in such writings as passed which tended to indicate that defendant had committed itself either to buy, or secure a release to include plaintiff. If there be doubt as to the construction or meaning, such must be resolved against the pleader.

It is to be noted that plaintiff only demurred to paragraph 2 of the answer. There was no controverting of either paragraph; the first paragraph set out all the communications between parties, save the two contained in the petition. These when taken together showed rather convincingly that at no stage of negotiations had there been a meeting of the minds, the most essential factor to constitute a binding contract. There was not plead, nor does there appear to have been an acceptance of plaintiff's offer or proposal. It is not shown, except by way of conclusion, that there was a contract which would permit appellant to recover damages for an alleged breach. The court properly dismissed the petition.

Judgment affirmed.