RENDERED: JULY 26, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1124-MR

LARRY GARMON ................................................................................ APPELLANT

v. APPEAL FROM BARREN CIRCUIT COURT
HONORABLE JOHN T. ALEXANDER, JUDGE
ACTION NO. 21-CI-00690

WILLIAM BOWLES ................................................................................ APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, L. JONES, AND LAMBERT, JUDGES.

CETRULO, JUDGE: Appellant Larry Garmon ("Garmon") appeals from a decision of the Barren Circuit Court following a bench trial. At issue, per Garmon, is the purchase of a skidder. As the trial court's factual findings are not clearly erroneous and the court's application of the law was proper, we affirm.

## FACTS

Garmon filed a verified complaint on December 22, 2021 alleging that he loaned appellee William Bowles ("Bowles") $11,000 to purchase a logging skidder but that Bowles defaulted on his obligation to repay. Bowles filed his answer on January 3, 2022 generally denying any allegations of wrongdoing. He explicitly denied that he ever received any money or funds from Garmon. He purchased the skidder, but claimed he did so with his own money. Bowles also asserted a counterclaim, alleging that Garmon "borrowed" or otherwise took Bowles' tractor and failed to return it.[1]

Initially, Bowles moved for summary judgment alleging that Garmon's complaint was barred by the statute of frauds, Kentucky Revised Statute ("KRS") 371.010, which requires certain contracts to be in writing. The trial court denied Bowles' motion on June 7, 2022, finding that the statute of frauds was not applicable to these claims. Thereafter, the parties conducted depositions and discovery. Garmon then moved for summary judgment, but the trial court denied his motion as well. Although remarking that the "weight of the evidence seemed to favor Garmon," the trial court held that summary judgment should not be granted unless it appeared that it would be impossible for Bowles to produce

---

[1] Bowles asserted by counterclaim that he purchased a 255 Massey Ferguson tractor for $4,000 and that Garmon borrowed it and did not return it. The trial court found against Bowles on his counterclaim as well, but there is no appeal from that ruling by Bowles.

-2-

evidence at trial. The court then set the matter for a bench trial on June 2, 2023. There is no indication that anyone objected to the matter being tried to the bench in lieu of a jury.

During the bench trial, several witnesses provided testimony, including both parties and their respective girlfriends. Regarding the skidder, Garmon testified that he shared a meal with Bowles on April 21, 2021, and Bowles mentioned he needed a skidder to harvest logs. Garmon told Bowles that he would loan him $11,000 to purchase a skidder because Bowles and his girlfriend had taken care of Garmon's brother while he was in poor health. Garmon alleges that Bowles was to repay the loan from the money he earned from harvesting logs. At the time, Garmon only had $3,000 in cash on hand, so the next day, April 22, Bowles' girlfriend drove Garmon to an ATM where he withdrew $8,000 in cash which he then gave to Bowles.

On April 23, 2021, Bowles purchased a John Deere 540A logging skidder for $10,000 which remains in his possession. The receipt is in his name. Bowles testified that Garmon never loaned him any money for the purchase of a skidder. He testified that the skidder was purchased with his own funds, and he denied any discussion or agreement that Bowles would harvest logs and pay Garmon any money.

The trial court below heard all of the witnesses and questioned several of the witnesses as to testimony adduced by the parties. The court found that in March 2021, before the events leading to this litigation, Bowles had sold Garmon an old truck. This transaction was memorialized in writing, and Garmon produced a receipt. The trial court noted that neither party was unsophisticated, inexperienced, or naive, and they understood the importance of written receipts, as demonstrated by the truck purchase. After reciting these findings (and several others deemed not relevant to this appeal), the trial court rendered its conclusions of law. The court recited several basic tenets of contract law relative to an alleged oral agreement and concluded that neither party had met their respective burden of proving a meeting of the minds sufficient to establish an oral contract.

On appeal, Garmon alleges that this Court should find an oral contract existed between the parties for the purchase of the skidder. He claims that the evidence and actions of the parties establish an oral agreement that Garmon loaned $11,000 to Bowles to purchase the skidder.

**STANDARD OF REVIEW**

We review the factual findings made by the trial court following a bench trial for clear error. Kentucky Rule of Civil Procedure ("CR") 52.01. Thus, we must not set aside its factual findings unless they are not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Further,

-4-

we must give due regard to the trial court's opportunity to judge the credibility of the witnesses, but we do not extend similar deference to its application of the law and legal rulings, which we review *de novo*. *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 285 (Ky. App. 2019).

## ANALYSIS

In this case, we have two parties presenting completely differing accounts of their dealings. Bowles denied that the skidder was purchased by funds provided by Garmon and also denied that there was ever any agreement of a loan or repayment to Garmon. On the other hand, Garmon testified that there was a loan agreement and did produce evidence that he withdrew $8,000 from his bank one day after he alleged that the parties had reached an agreement. Bowles' girlfriend did acknowledge that she drove him to the bank where he withdrew money, but denied any knowledge of what the money was to be used for, any discussion of a purchase of the skidder, or any loan agreement reached between the parties. It appears Bowles' defense was premised, in part, on Garmon purchasing some real estate in cash around the same time as these alleged transactions.

In contrast, Garmon and his girlfriend testified that the request for a loan was made by Bowles who had a plan to cut timber and then repay him from the proceeds. Garmon's girlfriend claimed she heard this discussion and observed monies change hands. Garmon also relies heavily upon the dates that were

-5-

established by the evidence. He claims he offered to loan Bowles $11,000 on April 21; he withdrew $8,000 from his account on April 22; and Bowles purchased a skidder on April 23.

While those facts or circumstances may point to some sort of discussion or agreement between these parties, we cannot say that the trial court erred in concluding that Garmon did not establish a meeting of the minds. In order to establish an implied contract, the words and conduct of the parties can be considered. *See Rider v. Combs*, 256 S.W.2d 749 (Ky. 1953). However,

> [t]o establish a contract implied in fact, the evidence must disclose an actual agreement or meeting of the minds although not expressed and such is implied or presumed from the acts or circumstances which according to the ordinary course of dealing and the common understanding of men shows a mutual intent to contract.

*Davis v. Davis*, 343 S.W.3d 610, 614 (Ky. App. 2011) (citing *Rider*, 256 S.W.2d at 749).

When the existence of a contract is in doubt, the party seeking to enforce it must at the very least provide "*prima facie* evidence of the agreement." *JPMorgan Chase Bank, N.A. v. Bluegrass Powerboats*, 424 S.W.3d 902, 910 (Ky. 2014) (citation omitted). A meeting of the minds must be present in order for an enforceable contract to be found; in fact, a meeting of the minds is "the most essential factor" in determining whether a binding contract exists. *Utils. Elec. Mach. Corp. v. Joseph E. Seagram & Sons*, 187 S.W.2d 1015, 1018 (Ky. 1945).

Garmon argues that his conduct of withdrawing monies from his bank a day before Bowles' purchase of the skidder demonstrates offer and acceptance. Bowles denied any agreement or acceptance of monies from Garmon. Garmon maintains that Bowles' version of events was not plausible or believable. However, Garmon did not establish the existence of terms of any oral agreement between these parties. The testimony was contradictory and not at all conclusive. Was the money, even if given to Bowles, a loan or a gift? Was it money to be paid back over time, or was it money promised to Bowles for other dealings? Bowles denied that he was given the money at all. He denied any money changing hands, even though Garmon's girlfriend claimed to have seen an exchange. Bowles denied that the parties had an agreement for a loan to be paid off by harvesting logs or even any discussion of this, while Garmon claimed Bowles took him over to a neighbor's property to demonstrate all the logs he would be able to harvest with a skidder.

Before hearing all of the evidence, while considering the motion for summary judgment, the trial court properly applied the summary judgment standard and concluded that the record had to be viewed in a light most favorable to the party opposing summary judgment. *See Big Sandy Co.*, 590 S.W.3d at 288 (citation omitted). At that juncture, this meant Garmon was not entitled to

summary judgment, even though the court believed the evidence to that point seemed to favor Garmon.  Garmon did not appeal the denial of summary judgment.

Then, the parties proceeded to trial.  The record reveals that it was a thorough trial with several witnesses and exhibits presented.  We will not set aside a judgment following a bench trial unless it is "clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  CR 52.01; *Clay v. WesBanco Bank, Inc.*, 589 S.W.3d 550, 553 (Ky. App. 2019).  We cannot substitute our opinion as to credibility of the witnesses.  Factual findings are only considered clearly erroneous if they are not supported by substantial evidence.  *Chin v. Chin*, 494 S.W.3d 517, 519 (Ky. App. 2016).

As the trial court noted, these parties had previously exchanged money for a vehicle purchase and that transaction was documented in writing, with a written receipt.  We cannot say that the trial court erred in finding that these parties understood the importance of written documentation which did not exist in regard to the skidder.  Neither can we find any error in the trial court's conclusion that there was no oral contract in this regard.  Accordingly, the judgment of the Barren Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:        NO BRIEF FOR APPELLEE.

Dennis K. Wilcutt
Glasgow, Kentucky