RENDERED: SEPTEMBER 19, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1045-MR

JACOB DOTSON AND MEGAN
DOTSON                                                          APPELLANTS


                      APPEAL FROM ROWAN CIRCUIT COURT
v.                   HONORABLE ELIZABETH H. DAVIS, JUDGE
                          ACTION NO. 23-CI-90101


CIA DRUG, L.L.C.; JENNIFER
ANDERSON; AND JOE ANDERSON                                       APPELLEES


                              OPINION
                             AFFIRMING

                         ** ** ** ** **

BEFORE:  COMBS, ECKERLE, AND L. JONES, JUDGES

ECKERLE, JUDGE:  Appellants, Jacob Dotson and Megan Dotson (collectively,

the "Dotsons"), challenge an order of the Rowan Circuit Court holding that they

entered into a valid and enforceable settlement agreement with Appellees, CIA

Drug, L.L.C. ("CIA Drug"), and Jennifer Anderson and Joe Anderson

(collectively, the "Andersons").  The Trial Court properly found that there was a

valid and enforceable settlement agreement reached by the parties and recorded via Zoom; there was a meeting of the minds as to the agreement's terms, which were not ambiguous; and the agreement does not violate the statute of frauds or the Kentucky Rules of Civil Procedure ("CR"). Hence, finding no clear error, we affirm.

For purposes of this appeal, the relevant facts are not in dispute. CIA Drug is a Kentucky Limited Liability Company organized in December 2012. At the time, CIA Drug was co-owned by the Andersons, along with Lee and Janie Ingram (collectively, the "Ingrams"), with each person owning a 25 percent interest. CIA Drug does business as Holbrook Drugs, operating a pharmacy and sundry store in Morehead, Rowan County, Kentucky.

On December 11, 2019, the Ingrams conveyed their collective 50 percent ownership interest in CIA Drug to the Dotsons. To facilitate the transfer, the Dotsons and Lee Ingram executed a promissory note and security agreement (the "Ingram debt"). Lee Ingram retained a first priority security interest in the collateral, described as:

> Jacob Dotson's twenty-five percent (25%) Member's Interest in CIA Drug, LLC; and Megan Dotson's twenty-five percent (25%) Member's Interest in CIA Drug, LLC, which Borrowers have this date purchased from Lender.

Record on Appeal ("ROA") at 393-94.

The Andersons signed a consent clause to the security agreement, which provides:

> The undersigned, . . . do hereby consent to the foregoing Security Agreement pledging the Borrower's Member's Interest in CIA Drug, LLC, as collateral in the above referenced Promissory Note.

ROA at 248, 396.

On March 28, 2023, CIA Drug and the Andersons filed a complaint asserting multiple claims against the Dotsons. Thereafter, the Trial Court issued an order restraining the Dotsons from accessing corporate records or bank accounts, withdrawing funds, taking any distributions, and entering the business premises. On September 1, 2023, the Dotsons filed an Answer and Counterclaim, asserting various claims against the Andersons. On October 27, 2023, the Trial Court issued an Agreed Protective Order, which allowed the Dotsons to access corporate records during the litigation.

On January 31, 2024, the parties participated in a mediation with retired Judge David Flatt. At the conclusion of this mediation, they agreed to terms of a proposed, confidential settlement, which the mediator recorded by writing these terms down and repeating them back to the parties and counsel contemporaneously on a recorded video via Zoom. The parties and their counsel then orally affirmed individually to the mediator on the record that this statement that he had written was in fact the agreement. Following a description of the

payment terms, the mediator provided as a term of the agreement that "Anderson then keeps the corporation's assets, its inventory, debts, anything associated with the corporation." Order, August 1, 2024, p. 2, ROA at 464. The mediator advised the parties to draft any other terms and information that they needed in writing.

Yet after the mediation, the parties disputed the meaning of the above-quoted phrase containing the term. The Dotsons asserted that their personal note to Lee Ingram should be included as "corporate debt." The Andersons took the position that the promissory note to Lee Ingram was a separate debt that they never intended to assume. Based on this disagreement, the Dotsons refused to sign the proposed settlement agreement and ceased making their monthly payment to Lee Ingram. In response, the Andersons declined to make the first payment of $100,000, as required by the proposed agreement.

The parties then argued before and briefed the Trial Court about the dispute. The Dotsons asserted that the agreement was unenforceable as there was no meeting of minds on an essential term. The Dotsons also argued that the agreement was invalid because it was never reduced to writing, in violation of the Statute of Frauds and CR 99.10. The Andersons argued that, under the clear and unambiguous terms of the agreement, the Ingram debt was personal to the Dotsons, and not a corporate debt to be assumed by the Andersons.

In its findings of fact, conclusions of law, and order issued August 1, 2024,[1] the Trial Court held that the agreement did not violate the Statute of Frauds due to an exception allowing enforcement of oral settlement agreements. The Trial Court did not address the application of CR 99.10. Furthermore, the Trial Court concluded that the recorded agreement satisfied the writing requirement of the Statute of Frauds. Thus, the Trial Court further found that the agreement was a valid and enforceable contract.

The Trial Court further found that the plain and unambiguous language of the agreement required the Dotsons to remain liable for the Ingram debt. The Trial Court noted that the agreement provides that the Andersons would only assume "the corporation's debts," and that the Ingram debt was personal in nature, as it was made to finance the Dotsons' purchase of shares from the prior owners. Thus, the Trial Court concluded that the Dotsons remained personally liable for the Ingram debt, and the Andersons were required to make the first $100,000 payment to the Dotsons, pursuant to the agreement. This appeal followed. Additional facts will be set forth below as necessary.

First, as the Trial Court noted, Kentucky's Statute of Frauds, Kentucky Revised Statute ("KRS") 371.010(7), requires any agreement that is not

---

[1] By agreement of the parties, the transcript of the June 6, 2024, hearing and the Order issued on August 1, 2024, were filed under seal.

to be performed within one year to be in writing and signed by the party to be charged. Further, as the Trial Court also pointed out, because the repayment schedule anticipated payments extending beyond one year, the agreement requires a signed writing. However, the Trial Court also noted that the writing requirement "may be satisfied if an oral agreement is stated on the record in the presence of the judge or transcribed by a court reporter and made part of the record." *Waggoner v. Waggoner*, 644 S.W.3d 548, 552 (Ky. App. 2022) (citing *Calloway v. Calloway*, 707 S.W.2d 789, 791 (Ky. App. 1986)). In addition, the Trial Court cited the long-standing rule that "the fact that a compromise agreement is verbal and not yet reduced to writing does not make it any less binding." *Motorist Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 445 (Ky. 1997), *abrogated on other grounds by Hollaway v. Direct General Insurance Co. of Mississippi, Inc.*, 497 S.W.3d 733 (Ky. 2016).

The Trial Court's findings on all of these grounds are well-supported. And the Dotsons cannot dispute this established precedent. Rather, they cite to provisions of the Civil Rules in support of their appeal. The Andersons respond that the Dotsons never raised this requirement to the Trial Court, and thus have waived it. However, the record reflects that the Dotsons raised this issue in their post-hearing brief, filed July 12, 2024. ROA at 379. The Dotsons' brief complies with Kentucky Rule of Appellate Procedure ("RAP") 32(A)(4) by beginning the argument with a reference to the record showing the location and manner by which

-6-

this issue was preserved for review.  Consequently, and as an initial matter, we find

that the issue is properly presented for our review.

Regarding the merits, the Dotsons rely upon CR 99.10, which

provides as follows:

> If an agreement is reached during the mediation
> conference, it shall be reduced to writing and signed by
> the parties. The parties shall be responsible for the
> drafting of the agreement, although the mediator may
> assist in the drafting of the agreement with the consent of
> the parties.[2]

Furthermore, CR 99.01(4) specifies that the mediation rules "shall be followed in

any mediation ordered by the trial court."

This contemplated procedure was followed in the case *sub judice*.

The mediator assisted the parties by recording the agreement reached by all parties

---

[2] The Kentucky Practice Commentary to CR 99.10 explains the source and scope of the rule in further detail:

> CR 99.10 was largely patterned after Kentucky Model Mediation
> Rule 11 and Section 3(10) of the 2005 Mediation Guidelines for
> Court of Justice Mediators.  While it provides that the parties are
> responsible for drafting the settlement agreement at the mediation
> conference, the more common practice is for the mediator to
> provide a short-form interim agreement with blanks to be filled in
> outlining the financial settlement terms and with other specific
> terms handwritten on the short form that is then signed by all
> settling parties or their counsel at the conclusion of the mediation,
> and for counsel for one of the settling parties to assume primary
> responsibility for drafting a more comprehensive settlement
> agreement and circulating it to all other counsel for review and
> comment prior to execution by all parties.

7 Ky. Prac. R. Civ. Proc. Ann., *Rule 99.10*, Agreement.

by both audio and video via Zoom. He wrote down the basic terms of the agreement. He read those terms back to the parties. All parties and counsel individually responded that the mediator's recorded statement was in fact the agreement. Thereafter, counsel for the parties were to craft a formal agreement. It was at this point that the disagreements about the agreement surfaced. But the requirements of a settlement agreement had already been met. The Dotsons have failed to show any violation of the civil rules or the statute of frauds.

Moreover, "the issue of contract formation . . . is a question of law to be reviewed *de novo*, where, as here, the relevant facts are undisputed." *Baumann Paper Co., Inc. v. Holland*, 554 S.W.3d 845, 848 (Ky. 2018). "The fundamental elements of a valid contract are offer and acceptance, full and complete terms, and consideration. For the terms to be considered complete, they must be definite and certain and must set forth the promises of performance to be rendered by each party." *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (internal quotation marks and citations omitted). Here, the video and audio recordings conclusively establish the offer, acceptance, terms, and consideration.

The Dotsons now cite an alleged lack of mutual understanding due to a failure of the meeting of the minds as to one term of the agreement, "Anderson then keeps the corporation's assets, its inventory, debts, anything associated with

the corporation." We find that portion of the agreement to be unambiguous. Anderson was to keep the assets and debt of the corporation. As the Trial Court deftly noted, if it is a corporate debt or asset, it is part of the agreement; if it does not belong to the corporation, it is not part of the agreement. There is simply no provision in the agreement for the assumption of the Ingram debt or any other non-corporate debt. The Dotsons say that their personal note is a corporate debt that Anderson "keeps" and now owes. We find that argument untenable under the plain language of the agreement.

Longstanding Kentucky precedent describes a meeting of the minds as "the most essential factor to constitute a binding contract." *See Utilities Elec. Mach. Corp. v. Joseph E. Seagram & Sons*, 300 Ky. 69, 75, 187 S.W.2d 1015, 1018 (1945). While parties to a contract need not have a mutual understanding as to every minor term in their agreement, the parties must "demonstrate their mutual assent to the essential terms of an agreement" for their contract to be enforceable. *Gen. Steel Corp. v. Collins*, 196 S.W.3d 18, 21 (Ky. App. 2006). In this case, there was a clear meeting of the minds regarding the assets and debts of the corporation, and those did not include the Ingram debt. The argument about the Ingram debt did not arise until after the mediation had concluded, and a full agreement had already been reached. That debt was incurred to finance the Dotsons' purchase of the Andersons' shares, and it was not part of the settlement agreement. If the

-9-

Andersons were to assume the Ingram debt, it would have had to have been a part of the agreement. It simply was not.

We cannot ignore the benefit of the technology in today's times. Written records and contracts have long been preferred over parties' oral recitations of memories, which can be distorted and contain lapses, preferences, and distortions. But now, even without a written contract, we have a writing by the mediator. And here, we also have a contemporaneous audio and video recording. There is little doubt in this case of the exact agreement of the parties: both what was included and what was not.

Having reached this conclusion, we deem most of the remaining issues in the Dotsons' appeal to be moot. But we will address one other issue of concern. The Dotsons question the Trial Judge's impartiality due to the relationship between the Andersons and a member of the Trial Court's staff. However, a motion to recuse must be presented either to the Trial Court pursuant to KRS 26A.015, or to the Chief Justice by an affidavit filed under KRS 26A.020(1). *See Nichols v. Commonwealth*, 839 S.W.2d 263, 264-65 (Ky. 1992). Here, the Dotsons did not raise their concerns under either statute. They only assert that the Trial Court should "investigate" the issue. This Court is not the proper venue for such complaints, and we are without authority to provide the Dotsons with any relief in this regard.

-10-

Accordingly, we affirm the August 1, 2024, Order of the Rowan Circuit Court holding that the parties entered into a valid and enforceable, unambiguous settlement agreement. As the Trial Court found, the Ingram debt is not part of that agreement, and the Andersons did not assume it.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Andrew K. Wheeler
D. Luke Vincent
Ashland, Kentucky

BRIEF FOR APPELLEES:

Paula Richardson Barber
Morehead, Kentucky